1839.

Griffith and
others
v.
Griffith and
others.

GRIFFITH AND OTHERS *v.* GRIFFITH AND OTHERS.

NOTICE to affect a purchaser is either actual or constructive. Con-
structive notice is of two kinds, that which arises from testimony,
and that which results from a record.

A bill filed before the statute of 1823, and the notice filed in the
county clerk's office since, is constructive notice by a record, and
is of so high a character, that it cannot be gainsayed. Con-
structive notice from possession of a deed, &c., showing the
claim, is also legally conclusive.

Where constructive notice is alleged to result from facts or cir-
cumstances, the presumption may be repelled.

Foundation of the rule that notice to an agent or attorney, is notice
to the principal. Extent of that rule. The extent of the rule as
to a bill, (and notice since the statute of 1823,) being constructive
notice. The cases of *Murray* v. *Ballou and others*, examined.
The rule is, that it is notice of what the bill plainly contains,
and nothing more, and should not be extended beyond the pro-
perty which is the subject of the suit. If land is affected by col-
lateral proceedings in a cause, where the bill itself does not affect
it, actual notice of such proceedings must be proven, to charge a
purchaser.

But such notice clearly traced to an attorney acting in the subject
matter, as in examining the title for the purchaser, appears suffi-
cient.

A purchaser charged with the notice, may avail himself of the want
of it, in the party from whom he bought.

*Pleading.* Although a plea of purchaser for valuable conside-
ration must deny notice in any agent, as well as in the party, yet
a general denial of notice in an answer in reply to a distinct
charge in the bill, and a replication filed, is sufficient, because
testimony is admissible to prove notice in an agent, under such
an issue.

THE original bill was filed on the 21st July, 1835,
against the defendant, Richard Griffith, father of the in-

Oct. 14.
Nov. 4.

fant plaintiff, seeking to call him to an account, for certain monies received by him out of the estate of the infant, given him by will, and misapplied by the defendant. It stated various acts of misconduct, and prayed a discovery of the monies received, and of the application of the same, in what securities they were invested, what real estate belonged to the complainant, and the income thereof, an injunction and receiver, and the removal of the father as guardian, and appointment of another. The defendant put in his answer, in which he denied the reception of any money as part of the complainant's estate, but set up various sums loaned to him by the executrix of the will, under which the infant was entitled, but says the monies were lent individually, not as executrix. He admitted the reception of a certain bond of one Braine, as part of the personal estate of the complainant, and he admitted the receipt of $1,325 25, thereupon for interest. The cash lent, as he stated, was $2,050, and certain promissory notes, part of the complainant's estate, were also lent, as stated in the bill. The defendant alleged his ability to answer for the amounts, and set up various matters which it is needless to state. He then avers, that he made no separate investment of his son's money, but invested the same with his own, chiefly in real estate. That he was the owner of two lots and houses in Norfolk-street, in the city of New-York, and of certain other property which he specifies.

This answer was filed on the 26th of August, 1835. On the 18th of March, 1836, a petition was presented on behalf of the complainant, for an injunction, and a receiver, especially of the property in Norfolk-street, described in the petition as Nos. 124 and 126, Norfolk-street. An order to show cause was made, and the order made absolute on the 4th of April, 1836. In the mean time, viz., in November, 1835, Richard Griffith conveyed the premises in Norfolk-street, to one Samuel Henderson, of Philadelphia, for the consideration expressed, of $9,000, and Henderson conveyed to the defendants, Keyser and Nash, on the 2d of April, 1836, for the consideration as expressed,

of $4,350. There were mortgages on the property to the amount of $3,750.

A receiver having been appointed under the order of April, 1836, these defendants presented a petition to the court on the 16th of February, 1837, setting forth their purchase, &c., and praying that such order might be vacated. This petition was dismissed.

On the 26th of May, 1837, a supplemental bill was filed, bringing Nash and Keyser before the court, charging them, as well as Henderson, with notice of the complainant's rights, and of the proceedings in this court. The extent of the denial in the answer, will be fully examined into hereafter. Issues were then directed, and were tried before the superior court, and a verdict given upon them. The finding is in substance this : That the deiendant, Richard Griffith, purchased the two houses and lots 124 and 126, Norfolk-street, with the money of the infant complainant; that he was insolvent; that Nash and Keyser bought the property for a valuable consideration on the 2d of April, 1836, and that the consideration paid was $4,100, the property being subject to mortgages for $3,750. That $8,000 was the fair value of the premises, at the date of such purchase. That such defendants had no knowledge of any claim thereto on behalf of the complainant, or such information or notice as ought to have put them upon inquiry. That the purchase was made after the filing of the original bill, after the injunction, and after a receiver had been ordered in the cause. That these defendants had no knowledge or information that any dispute or litigation existed between the complainant and his father, in regard to such premises, and that they purchased the property *bona fide*, and not in fraud of the rights of the complainant. The seventh issue was thus framed : " Was " Eber Wheaton, the counsel of the defendants, Keyser and " Nash, informed before the purchase of such houses, Nos. " 124 and 126, Norfolk-street, that a bill in chancery had " been filed by the complainant, against the defendant, " Richard Griffith, and that the said premises were the

" subject of litigation in chancery ?" This the jury find in the affirmative.

*Mr. W. Silliman,* for the complainant.

*Mr. Anthon,* for the defendants, Nash and Keyser.

Nov. 4.    · THE ASSISTANT VICE-CHANCELLOR :—In relation to the apparent discrepancy in the finding of the several issues, I am satisfied that can be reconciled. The jury plainly mean to find that the defendants had no personal knowledge of the claim, and therefore purchased *bona fide,* and had personally no such notice as should put them upon inquiry. The finding of the seventh issue leaves the question open, whether the notice to their attorney was sufficient in law to affect their purchase.

Upon this question, the cause has been chiefly argued,— first as to what information Wheaton possessed, and next, whether it binds the defendants.

It is necessary to advert to some of the rules of the court, upon this head.

" Notice," as Lord Erskine says, (*Hiern* v. *Mill,* 13 *Vesey,* 120,) " is actual or constructive. The former must be
" proved, as any other fact. Constructive is as where no-
" tice is given to an agent ; but the agent must come to
" the knowledge, while concerned for the principal, and in
" the course of the very transaction which becomes the sub-
" ject of the suit. The rule as to notice, arising from *lis*
" *pendens,* is a positive rule of law, made to prevent pur-
" chases of litigated titles."

Constructive notice, I apprehend, is of two kinds. That which arises upon testimony, and that which results from a record.

A bill filed before our statute of 1823, was notice by record of all that the bill contained. A notice duly filed in the clerk's office since that statute is of the same nature. Notice of this character, although only constructive, cannot be gainsayed. And there are some other cases of constructive notice, in which the legal presumption is not

to be controverted. Thus, if a mortgagee has a deed put in his hands, reciting a deed which shows title in another person, the presumption is conclusive. (*Plumb* v. *Fluitt*, 2 *Anst.* 438. *Tanner* v. *Florence*, 1 *Ch. Ca.* 259. *Bisco* v. *Banbury*, *Ibid.* 287.) In such cases, all the evidence which is requisite, is to trace the deed imparting the information into the party's hands.

And again, there are cases in which the constructive notice arises from facts, which in themselves are not necessarily conclusive, but may be so or not, according to peculiar circumstances. Thus, in *Birch* v. *Ellames*, (2 *Anst.* 427,) title deeds had been deposited as a security for a loan with one Peploes, and the party then executed a mortgage to the defendant. He admitted, that upon executing the mortgage, he inquired for the title deeds, and was informed of their being in Peploes' hands, but that he understood them to be for safe custody only. He had received this information from his agent, who had prepared the mortgage. This notice was held sufficient to charge him, and he was decreed to pay the debt, for which the title deeds were held as an equitable mortgage. On the other side, in *Plumb* v. *Fluitt*, before cited, there was also a deposite of deeds, and then a mortgage, and it was in proof, that the mortgagee had inquired for the deeds, and was informed that they could not be given then, but would be sent in a few days, and no notice of the deposite was proven. The mortgagee was not affected with notice.

Thus we see that in one case, the knowledge that the deeds were in the hands of another, was sufficient notice, though the object was unknown; in the other case, the omission to get the title deeds was not sufficient, a call being made for them, but there being no notice of their being in the hands of another.

The doctrine of constructive or implied notice arose very early in the court; but it soon became obvious that from the course of business, the equitable claim of a party must be defeated in a vast majority of cases, if the notice must be personal to the actual party—if he must be charged with positive information, or as in the case of

deeds, if they must be traced into his own hands.  Hence the rule was adopted that notice to an agent is equivalent to notice to the party himself.  (*Brotherton* v. *Hatt*, 2 *Vernon*, 374.  *Le Neve* v. *Le Neve*, 3 *Atk.* 646.  *Kirk* v. *Abney, Nelson's Rep.* 59.)  This last case will illustrate the whole doctrine.  A father had negotiated a purchase of land for his son, and was apprized of a prior contract for the sale of the same.  The son plead his purchase without notice of such contract.  The court decreed, that notice to the father, acting as agent, was sufficient, and decreed a conveyance by the son to the party with whom the contract was made.  (See *Le Neve* v. *Le Neve*, 3 *Atk.* 649.)

This rule was qualified by the decision, that the agent must be one employed in the particular subject matter.  If he had previously got the information in another matter, his principal was not bound by that.  (*Ashley* v. *Bailey*, 2 *Ves. sen.*, 368.  *Warrock* v. *Warrock*, 3 *Atk.* 294.  *Francis* v. *Wood, Tamlyn*, 175.)  A modification of this rule, however, was declared by Lord Eldon, that each case must depend upon its own circumstances.  The one transaction might follow so close upon another as to render it impossible to give a man credit for having forgotten it.  (*Mountford* v. *Scott, Turner & Russ.* 279.)

There are some cases which refer particularly to the relation of solicitor and client.  For example, in *Tunstall* v. *Trapps*, (3 *Simons*, 305,) the vice-chancellor said, that notice to a solicitor was actual notice to the client; that the security to Nicholas Pocoche, and the trust deed for sale were parts of one and the same transaction ; and therefore that the solicitors of Nicholas Pocoche, must have had notice of the judgment prior to the execution of the security to their client, and he held, that the party was as much bound by the notice of the judgment given to his solicitor, though that judgment was unregistered, as parties who purchased under the Middlesex Register Act were bound by notice given to them.

The vice-chancellor here alludes to the decisions which established that notice of an equitable claim will postpone the purchaser, although he has had his deed registered

1839.

Griffith and
others
*v.*
Griffith and
others.

under the statute of Anne, respecting registers in the county of Middlesex. (*Le Neve* v. *Le Neve,* 3 *Atk.* 649. *Wyatt* v. *Barnewall,* 19 *Vesey,* 439.)

I consider that the phrase actual notice, as applied to the notice to an agent, is not strictly correct. Actual notice is personal, and that alone. The personal notice to an agent, when the principal is not charged with it, is equivalent to actual notice, but is still constructive. (*Hiern* v. *Mill, ut supra.*)

Upon the direct question as to the effect of *lis pendens* as a notice, it is necessary to refer to the decisions in our own court. *Murray* v. *Ballou,* (1 *Johns. C. R.* 566,) applied the rule in its full force. Winter, a trustee, had sold lands to the defendant, after a bill had been filed in this court to displace the trustee, and an injunction issued against his selling the property. He was held chargeable with notice and decreed to convey.

In *Murray* v. *Lilburn,* (2 *Johns. C. R.* 441,) land had been sold by Winter, the trustee, to Sprague, and a bond and mortgage taken for the purchase money, which was assigned by Winter to the defendant Lilburn. The court gave the plaintiff liberty to take either the land or the bond and mortgage. The supplemental bill in that cause against Winter, made all the securities arising from or relating to the trust one of the subject matters of litigation. Then came the case of *Green* v. *Slayter,* (4 *Johns. C. R.* 39,) bearing more pointedly upon the present. The same trust was in question as in the prior cases before Chancellor Kent, but it was for the first time insisted that it did not appear by the bills filed by the *cestui que trust,* that the lands sold to the defendant, or the security taken for the purchase money, were trust property, or any part of the subject matter of the suit. The lands bought by the defendant were lots 16 and 21 in sub-division of great lots 83, 84 and 85, in *Cosby's Manor.* The bill referred to several lands in different counties, and among others mentions " divers lands in Cosby's Manor," which had been purchased by William Green, and mortgaged to Heatly, and that the mortgage was registered in the counties

where the lands lay. It stated that Winter had sold various parts and parcels of the lands in Cosby's Manor, and the supplemental bill mentioned lot 50 in Cosby's Manor as belonging to the estate. The registry of the mortgage given to Heatly mentioned only certain tracts, parcels or lots in Cosby's Manor containing 7,200 acres, and referred for boundaries to a deed from the executors of Scott, of December, 1792. It was not averred that this deed was on record.

The chancellor was obviously pressed by the argument of the insufficiency of this description. He held, however, that it was enough to require of the purchaser that he should have resorted to Winter for the source of his title, and was enough to put him upon inquiry.

In *Carr* v. *Callaghan*, (3 *Little's Rep.* 365,) it was held that to affect a party as purchaser *pendente lite*, it was necessary to show that the holder of the legal estate was impleaded before the purchase which is to be set aside.

In *Frakes* v. *Brown*, (2 *Blackford's Rep.* 295,) there was a suit for a divorce and alimony. An order was made, during its progress, for payment of a sum of money, and restraining the defendant from parting with his real estate. The order it was admitted affected the land, or could be executed against it. The defendant had purchased after the order was made without any actual notice of it. It was held that this was not constructive notice upon the doctrine of *lis pendens*. Actual notice must be proved.

In *Edmonds* v. *Crenshaw*, (1 *McCord's Ch. Rep.* 264,) it was held that the doctrine of notice by *lis pendens* must not be extended beyond the property which is the immediate object of the suit.

The result of these cases is that notice arising from a bill filed in this court is notice of what that bill contains, and nothing more. Whether the case is under the law as it stood before our statute of 1823, or since, the doctrine is the same. The notice of the statute is only a means of publicity. Whatever was sufficient before the statute to

charge the party is sufficient now if the notice is filed with the clerk: whatever was insufficient then, is insufficient now.

Another rule to be drawn from the cases is, that collateral proceedings in a cause by which land becomes affected, are not constructive notice where the bill is not such. Actual notice must be proven.

It is impossible to say that the original bill affected the purchasers. It had no relation to any specific real estate at all. It does not explicitly ask even a discovery as to the real estate in which the funds of the child were invested. The utmost that it asks is, how the income has been applied; and if loans were made, upon what security, and what real estate belongs to the complainant. Then the answer disclosed that the defendant held the lots in question claiming that he was the owner of them, and averring that he owned property enough to pay the complainant all the money of the estate received by him. Certainly no constructive notice could arise upon this.

The supplemental bill was filed after the purchase by the defendants was consummated. This therefore cannot aid the complainant.

Then the question rests upon the effect of the petition for a receiver, and the orders of the court under such petition, and the finding of the jury upon the seventh issue.

The petition was presented by the complainant on the 18th of March, 1836, stating that these two lots had been purchased with the money of the complainant, and praying an injunction and receiver. An order to show cause was then made referring to the lots specifically, and an order absolute was made on the 4th of April, 1836.

Under the principle before stated as to collateral proceedings, this petition and the order were not constructive notice.

Then the remaining inquiry is, whether Mr. Wheaton, the attorney who examined the title for the defendants, had actual notice of these proceedings, or was otherwise apprized that the particular lots were then the subject of litigation. The finding upon the seventh issue seems to

decide this question. The issue was " whether E. Whea-
" ton, the attorney and counsel of the defendant, was in-
" formed before the purchase of the lots and houses Nos.
" 124 and 126, Norfolk-street, that a bill in chancery had
" been filed by the complainant against the defendant R.
" Griffith, and that the said premises were the subject of
" litigation in chancery." This is found in the affirmative.

The supplemental bill bringing in the defendants Nash
and Keyser, was filed 25th of May, 1837, and charged that
Wheaton was apprized of all the proceedings in the suit
before the purchase was effected ; and set forth an affi-
davit made by Wheaton, in which he swears that he acted
as counsel of the defendants upon the purchase, and caused
search to be made in the supreme court and in the court
of common pleas, clerk's office for the city and county of
New-York for *lis pendens in the cause,* and could find
none.

I incline to think that if this was the only evidence be-
fore the jury, it would not have justified the verdict. It
would not have been a ground for charging the party
with notice in this court. I have been desirous of having
the actual evidence given to the jury before me. But I
am satisfied that I cannot act upon it whatever may be its
nature ; and that there is no mode in which this court can
interfere under the statute of 1838, in pursuance of which
the trial was had. But although the finding is explicit,
that Wheaton knew that the complainant had filed a bill,
and that the premises in question were the subject of liti-
gation in chancery, still this court has before it the fact as
to the form and mode in which that litigation existed ;
not expressly in a bill, but in collateral proceedings taken
under a bill which in itself plainly did not affect the pro-
perty in question as against a purchaser. My impressions
are, that where such notice can be actually traced to an
attorney acting in the very subject matter, the principal
must be bound. But I shall not decide the cause on that
ground. There is another which I consider saves the de-
fendants. A purchaser with notice has a right to avail

himself of the want of notice in the party from whom he derives title.

Some questions here arise as to the application of this rule. First, whether the pleadings enable the defendants Nash and Keyser to avail themselves of it; and next whether Henderson, under whom they hold, was a purchaser unaffected with notice.

The rule is thus stated in *Sweet* v. *Southcote*, (2 *Br. C. R.* 66.) The bill was to discover whether the defendant, an assignee of a mortgagee had not notice that the mortgagor was only tenant for life, stating that the title deed by which this appeared was in the defendant's hands. He pleaded that he was assignee for valuable consideration, and through many assignments from persons who had no notice. It was argued that the plea was not good, as it should have stated whether the defendant personally had notice. The master of the rolls allowed the plea, holding that it was immaterial whether the defendant had notice or not, if those through whom he claimed had not. (*Bumpers* v. *Platner*, 1 *Johns. C. R.* 213. *Harrison* v. *Forth*, *Prec. in Ch.* 51. *Andrews* v. *Wrigley*, 4 *Br. C. R.* 125. *Alexander* v. *Pendleton*, 8 *Cranch*, 462. *Hogthorp* v. *Hook*, 1 *Gill & Johns.* 273. *Curtis* v. *Lunn*, 6 *Mumf.* 42.) This rule was sanctioned by Lord Hardwicke in *Brandlyn* v. *Ord*, (1 *Atk.* 571,) with the qualification that the subsequent purchaser sheltering himself under the first, must be the purchaser of the same interest in every respect.

Another rule is, that if the purchaser with notice would avail himself of the want of notice in his vendor, he must expressly aver that ignorance in pleading. (*Gallatin* v. *Cunningham*, 8 *Cowen*, 361, S. C. *Hopkins*, 58. *Woodruff* v. *Cook*, 2 *Edw. Rep.* 264.) The supplemental bill states, that the defendants Nash and Keyser presented a petition to the court for discharging the order for a receiver, in which they stated a conveyance by Richard Griffith to Samuel P. Henderson, by deed dated 4th of November, 1835, for the consideration of $9,000. It then alleges that such conveyance, if any, was fraudulent and

void, made with the intent of defeating the claims of the complainant. That Henderson at that time was well acquainted with the suit and proceedings, and was one of the counsellors of Richard Griffith in relation to it. That the conveyance was antedated, and that no consideration was paid by Henderson.

The defendants answer these allegations by saying, they are informed and believe that the conveyance by Griffith to Henderson was not made for the purpose of defrauding the complainant, and therefore deny the same; that they have been informed and believe, that the said Henderson had no knowledge of the complainant's alleged rights or interests in the premises, or of the proceedings of the said complainant in said suit, and they deny very fully all fraud in Henderson. They deny that he did not pay the consideration money. They also state that the deed was without date, but say that the acknowledgment was taken on the 4th of November, 1835, as appears by the register of the deed in *Liber*, 384, p. 48. There is a mistake in the answer as to this acknowledgment, in stating that it was the deed of Henderson and wife.

There are several objections to this answer. It does not contain a denial that Henderson had information of the proceedings, nor that his agent had knowledge or information, but barely that they have been informed and believe that Henderson had not knowledge; it would be open to great objections if it was in the form of a plea of a purchase for valuable consideration by Henderson.

Again, the bill no where admits the existence of the deed to Henderson, but always makes the allegations against it, with supposing its existence, not admitting it. The answer refers to the deed as on record, but it is not produced nor referred to in the evidence.

But the jury have found that the defendants were purchasers for valuable consideration, and that the purchase money was duly paid. And the answer sets up the purchase from Henderson. It is then established in the cause that Henderson had the title. That title is impeached in the bill as fraudulent, taken with full knowledge of the

proceedings, without paying the pretended consideration money. These allegations are substantially met in the answer, sufficiently so to put the charges in the bill at issue, and justify the taking of testimony or framing issues under the pleadings. Now admitting that this answer would not stand as a plea of a purchase for valuable consideration, the case appears to me different, where the cause has gone to proof upon pleadings substantially raising every question which can arise upon such a plea, if framed with the utmost perfectness. If a plea should omit to deny notice in the party's agent, as well as himself, it must be overruled, because although true, it is not a bar to proof. Testimony to show notice to the agent is admissible. But where a bill states the pretence of a defendant that a deed was executed, and impeaches that deed as obtained with notice, and the answer so meets the allegations, that an issue is raised, and then the plaintiff replies and goes to proof, he certainly can prove notice to the agent as well as the principal, and certainly can prove every thing else which tends to displace the defence. The complainant in this case, apprized of the claim of the defendants through the deed to Henderson, assails its validity with the most pointed and comprehensive allegations of every character tending to overthrow it; and when an issue is fairly tendered to him, refrains from supporting one of such allegations by evidence, and now relies upon defects in the pleading, which, although very great, never could have shut out the proof.

My conclusion is, though the point is doubtful, that Henderson under the pleadings and testimony may be assumed by the court to have been a purchaser without notice, and that the defendants can protect themselves under his unimpeached title.

The supplemental bill must be dismissed as to Nash and Keyser but without costs, and the complainant may have an order of reference to take the account prayed against Richard Griffith, and a decree that after such accounting he be removed from his office as guardian. Also

1839.

Griffith and others.
v.
Griffith and others.

that he pay the costs of such original bill and the proceedings which have properly arisen under it.