# FIFTH DISTRICT, NOVEMBER, 1897.

### R. D. Bowen v. T. A. Kirkland et al.

Delivered November 6, 1897.

**1.  Limitations Not Suspended—Suit to Annul Administration.**

The running of limitations against an administrator and a claimant under him is not, in an action by such claimant to recover real property formerly belonging to the estate, suspended as against the defendant, a purchaser from the heir, by reason of the pendency of an action to annul the administration, nor during an appeal from a judgment in such action declaring such administration void, which judgment was reversed.

**2.  Lis Pendens Not Applicable—Suit to Revoke Administration.**

The doctrine of lis pendens does not apply to an action to revoke an administration so as to affect a purchase of real property from the heir pending such action and prevent him from availing himself of the time during which such action was pending, in support of his plea of limitations against a claimant under the administrator.

Error from Hill.  Tried below before Hon. J. M. Hall.

*Leake & Henry, Frank Reeves,* and *Jeff Wood,* for plaintiff in error.

1.  Where the administration of an estate is granted and afterwards the heir of the decedent institutes proceedings attacking the validity of such administration, charging there is no necessity therefor, and seeks to have the same declared null and void and the administrator removed, and during the pendency of such litigation such heir sells the property of the estate of the decedent to a party who goes into possession thereof, the statute of limitation will not run in favor of such purchaser from the heir during the pendency of said litigation.  Todd v. Willis, 66 Texas, 714; Mitchell v. DeWitt, 20 Texas, 294; Griffin v. Wakelee, 42 Texas, 513; Churchill v. Martin, 65 Texas, 367; Fields v. Austin, 30 S. W. Rep., 386.

2.  The defendant Kirkland, having purchased from Halbert during said litigation, the doctrine of lis pendens applies to him.  Paxton v. Meyer, 67 Texas, 96; Harle v. Langdon, 60 Texas, 555.

*Tarlton & Morrow,* for defendants in error.—1.  The law entitles the administrator of an estate to the possession of the lands of the estate, and when any one claiming adversely to the administrator takes possession of such land, a cause of action accrues in favor of the administrator and against the person in possession, and limitation begins at once to run against the administrator.  Robb v. Henry, 40 S. W. Rep., 1047; Duke v. Reed, 64 Texas, 714; Calhoun v. Burton, 64 Texas, 311; Rev. Stats., art. 3218; Ringe v. Oliphant, 62 Texas, 682; Thomas v. Greer, 6 Texas, 139; McAdams v. McAdams, 32 S. W. Rep., 87; 6 Texas Civ. App., 639.

2.  When an administrator has been appointed and has qualified, a subsequent proceeding brought by the heir to remove him does not suspend the duty or right of the administrator to sue for the possession of

lands belonging to the estate when they are trespassed upon. He is entitled to the right and charged with the duties of administrator pending an appeal in such proceeding. Robb v. Henry, 40 S. W. Rep., 1047; 85 Texas, 605; Davis v. Anderson, 30 S. W. Rep., 432; Rippetoe v. Dwyer, 65 Texas, 707; Russell v. Kirkbridge, 62 Texas, 459; 79 Texas, 671; 72 Texas, 533; Hoffman v. Blum, 64 Texas, 333; Wortham v. Boyd, 66 Texas, 403; Sheridan v. Henderson, 38 Texas, 251.

FINLEY, CHIEF JUSTICE.—The statement of the case and material facts established upon the trial contained in the brief of the counsel for plaintiff in error is not objected to as incorrect by counsel for defendants in error, and we shall therefore adopt the same as correct.

This is a suit of trespass to try title brought by the plaintiff in error in the District Court of Hill County on June 9, 1894, against the defendant in error T. A. Kirkland, for the recovery of a tract of 184¾ acres of land in Hill County, patented to the heirs of John E. Cravens, deceased, assignee of John Sinclair, January 18, 1872.

Defendant filed original answer September 29, 1894, pleading general demurrer, general issue, and not guilty.

On March 19, 1895, said defendant filed his first amended original answer, in which, in addition to the above, he pleaded three, five, and ten years statute of limitation; also permanent and valuable improvements in good faith. He also further pleaded that he purchased the land sued for by plaintiff from H. A. and M. P. Halbert, and took from them a general warranty deed, dated and acknowledged November 5, 1886, and paid them therefor $3800, and he vouched them in and asked that they be made defendants, and in case of his eviction, for a judgment against them on their warranty.

September 26, 1895, plaintiff filed his first supplemental petition, alleging that in April, 1880, Earl E. Cravens, a minor, departed this life in Dallas County, Texas, where she then resided, leaving an estate. That on September 20, 1880, George F. Alford was appointed by the County Court of said Dallas County administrator of the estate of said Earl E. Cravens, and duly qualified as such. That on February 28, 1882, M. P. Fortson, the sister and only heir of said Earl E. Cravens, joined by her husband, B. F. Fortson, filed her petition in said County Court in said administration, alleging that there was no necessity for administration; that it was invalid and void, and praying that said administration be dismissed and declared invalid and void, and that the appointment of said Alford as administrator thereof be set aside and he removed therefrom; that all his acts therein be declared null and void, and that said administration cease.

On May 16, 1882, said petition came on for hearing, and after hearing the evidence and argument of counsel, the said County Court took its decision under advisement, and on May 22, 1882, rendered its judgment that said administration on said Earl E. Cravens' estate was a nullity; that all the acts and orders of said court and all the acts of said adminis-

trator in said administration were null and void; that the appointment of said Alford as such administrator be revoked, canceled, set aside, and annulled, and that all acts done by him as administrator be declared null and void. From said judgment Alford appealed to the District Court of Dallas County, and said cause came on to be heard in said court on December 12, 1883, and B. F. Fortson having died, said cause proceeded in the name of Mary P. Fortson alone, and said court rendered its judgment in favor of said Alford and decreed that Mary P. Fortson take nothing by her suit. Mary P. Fortson appealed from said judgment to the Supreme Court, and the Supreme Court, on December 5, 1884, reversed said judgment and remanded the cause back to the District Court for further proceedings.

Said Mary P. Fortson having intermarried with H. A. Halbert, said cause thereafter proceeded in the name of Mary P. Halbert et al., and on April 6, 1886, said cause coming on to be heard, said District Court did adjudge that the County Court of Dallas County did not have jurisdiction to grant administration on the estate of said Earl E. Cravens to said Alford, and that all his acts as such administrator were null and void; that he be removed, and that his appointment as such administrator be revoked, set aside, and held for naught.

Said Alford appealed from said judgment to the Supreme Court, and the Supreme Court, on June 18, 1889, reversed the judgment of said District Court and dismissed the cause of said plaintiffs Halbert, and adjudged that said administration was a valid one, and ordered said judgment certified to the District Court for observance. Said cause under the decision of the Supreme Court came on to be heard in the District Court, on February 15, 1890, and said court adjudged that said plaintiffs take nothing by their suit; that the said administration be sustained, and that said judgment be certified to the County Court of Dallas County, with instructions to proceed in said administration. Said County Court did proceed in said administration, and that plaintiff owns the property sued for by virtue of an order of sale thereof by said County Court, a sale of the same by administrator to plaintiff, a confirmation of said sale by said court, and a deed of conveyance by said administrator to him under said orders—all of which was done since February 15, 1890; said property being owned by said Earl E. Cravens in her lifetime and belonging to her estate after death till owned by plaintiff, as above stated.

Said defendant Kirkland claims to own said property by virtue of a deed therefor to him from Mary P. Halbert, the only heir of said Earl E. Cravens, joined by her husband H. A. Halbert, dated November 5, 1886.

On September 26, 1895, said H. A. Halbert and Mollie P. Halbert filed their original answer, in which they admit the conveyance by them of the land to defendant Kirkland, and they adopt the pleadings of said defendant. They also in said answer attacked the validity of the administration on Earl E. Cravens' estate, and the sale by the administrator to plaintiff of said land, for fraud.

The plaintiff to all that part of said answer attacking said administration sale, excepted by supplemental petition filed thereto, September 30, 1895. On March 4, 1896, trial was had before a jury, and the court charged them to find for the defendants under their plea of five years statute of limitation, which they did, and judgment thereupon was rendered for defendants. Plaintiff filed motion for a new trial, which was overruled, to which plaintiff in open court excepted and gave notice of appeal. Plaintiff, on February 2, 1897, filed petition and bond for writ of error, assignments of error, and brings the case to this court on writ of error.

*Statement of Material Facts Proved.*—1. Plaintiff proved the land sued for was patented to the heirs of John E. Cravens, assignee of John Sinclair.

2. Plaintiff proved by certified copy of decree of partition by the County Court of Anderson County, in the administration of the estate of John E. Cravens, between Mary P. Fortson, joined by her husband B. F. Fortson, and Earl E. Cravens, that this 184¾ acres sued for was decreed to Earl E. Cravens. Said decree is dated July 21, 1879.

3. That John E. Cravens and wife, Mary B. Cravens, died prior to 1870, the former intestate, the latter leaving a will naming Earl E. Cravens and M. P. Fortson her devisees. The said Earl E. Cravens and M. P. Fortson were the children and sole heirs of said John E. Cravens and wife. That Earl E. Cravens died a minor and intestate and unmarried, in 1880, in Dallas County, and Mollie P. Fortson has since become a widow, and intermarried with H. A. Halbert.

4. Plaintiff proved that on September 20, 1880, George F. Alford was appointed administrator of the estate of Earl E. Cravens by the County Court of Dallas County, and qualified as such September 28, 1880.

5. That Alford as administrator of said estate, in an exhibit of the condition of said estate filed in said County Court on January 24, 1893, reported the following claims as allowed by him against said estate, viz: Claim of T. J. Williams, allowed November 10, 1880, for $200; claim of Dr. J. A McKee, allowed January 2, 1882, for $38.52; claim of J. W. Gulick, allowed February 1, 1882, for $27; claim of A. M. Henkle, allowed December 31, 1881, for $9.75.

6. And he also showed by said exhibit an established indebtedness against said estate of $2885.56. Also proved that said County Court on February 27, 1893, approved said exhibit.

7. That on February 27, 1893, said County Court ordered said administrator to sell the said 184¾ acres of land herein sued for by plaintiff, and that on November 11, 1893, said court confirmed the sale made by said administrator to plaintiff of said 184¾ acres.

8. Plaintiff gave in evidence the deed made by said administrator to him to said land under said order, deed dated November 13, 1893.

9. Plaintiff then gave in evidence a "brief statement" by the clerk of the County Court of Anderson County, Texas, under his hand and seal of

office, of the proceedings and decree of said County Court in the parti-tion of the estate of John E. Cravens, between the heirs of said Cravens, giving date of said decree, July 21, 1879; Mollie P. Fortson, joined by her husband B. F. Fortson, Earl E. Cravens, and George F. Alford, ad-ministrator of John E. Cravens' estate, being the parties to said partition, and showing that said 184¾ acres herein sued for was decreed to Earl E. Cravens. Said "brief statement" dated March 11, 1895, and filed for record and recorded in Hill County March 14, 1895.

10. Defendant Kirkland gave in evidence a deed made by H. A. Hal-bert and his wife M. P. Halbert, the only surviving heir of John E. Cravens, deceased, to him, duly signed, acknowledged, and recorded, dated November 5, 1886, and recorded in Hill County December 31, 1886, conveying to him the land sued for.

11. Defendant Kirkland also proved that he had actual peaceable pos-session of said land sued for, cultivating, enjoying, and using the same and regularly paying the taxes thereon, and claiming the same under a deed duly registered for more than five years next before the institution of this suit by plaintiff; and defendant testified that at the time he pur-chased said land he believed he was getting a good title thereto, and had no knowledge of the partition decree introduced by plaintiff, and that so believing and without such knowledge he paid the value of said land for the same.

*Opinion.*—There is but one assignment of error presented to the court in the brief of counsel. It is as follows: "The District Court erred in sustaining the objection of the defendants to the introduction in evidence by plaintiff of the following instruments, viz:

"1. Certified copy of petition filed by Mary P. Fortson, joined by her husband B. F. Fortoson, in the County Court of Dallas County on Feb-ruary 28, 1882, in the estate of Earl E. Cravens, praying that the admin-istration on said estate be dismissed, that the appointment of George F. Alford as administrator be set aside and he removed, and that all his acts as such administrator be declared null and void.

"2. Certified copy of the judgment of said County Court on said petition, dated May 22, 1882, decreeing that said administration was a nullity; that all orders, etc., of said County Court, and all acts of said ad-ministrator were null and void, etc.

"3. Certified copy of appeal bond given by said Alford appealing said matter to the District Court of Dallas County, dated, filed, and approved June 2, 1882.

"4. Certified copy of the judgment of said District Court on said ap-peal, dated December 12, 1883, in which it is shown that, B. F. Fortson having died, said cause proceeded in the name of Mary P. Fortson alone, in which judgment was rendered in favor of said Alford and established the validity of said administration.

"5. Certified copy of appeal bond given by Mary P. Fortson, appealing said cause to the Supreme Court, filed and approved December 29, 1883.

"6. Certified copy of the judgment of the Supreme Court, dated December 5, 1884, reversing said judgment of the District Court, and remanding the cause back for further proceedings in accordance with the opinion of the court on said appeal.

"7. Certified copy of the judgment of the District Court (said Mary P. Fortson having intermarried with H. A. Halbert the cause proceeded in the name of Mary P. Halbert et al.), dated April 6, 1886, adjudging that the County Court of Dallas County did not have jurisdiction to grant said administration, and declaring the same null and void.

"8. Certified copy of the appeal bond given by said Alford appealing said cause to the Supreme Court, approved and filed May 8, 1886.

"9. Certified copy of the judgment of the Supreme Court on said appeal, dated June 18, 1889, reversing said judgment of the District Court and dismissing the cause of M. P. and H. A. Halbert, and ordering said judgment certified below for observance.

"10. The certified copy of the mandate of the Supreme Court on said judgment to the District Court, ordering it to observe the judgment of said court, dated August 16, 1889, filed in District Court August 17, 1889.

"11. The certified copy of the judgment of the District Court in said cause, dated February 15, 1890, decreeing that said Halberts take nothing by their suit, that said administration be sustained, and that the judgment be certified to the County Court of Dallas County with instructions to proceed in said administration. And refusing to permit plaintiff to use the same in evidence. All of which is shown in plaintiff's bill of exceptions number 3, because it was admissible for plaintiff in reply to defendant's plea of the statutes of limitations to prove that from 1882 continuously to 1890 litigation as to the validity, life, and existence of said administration was pending; the said defendant having purchased from the heir M. P. Halbert during the pendency of said litigation."

It is insisted that the statute of limitations does not run under such conditions as were proposed to be shown by the rejected evidence.

It is fully and unreservedly admitted that limitations did run against the administrator of the estate of Earl E. Cravens, deceased, unless the operation of the statute was suspended by the proceedings attempted to be shown in evidence. In other words, it is not denied nor doubted that limitations run against administrators of estates, as a general rule; but the contention is, that such circumstances as are disclosed by the evidence in question suspend the operation of the statute.

In the case of Robb v. Henry, 40 Southwestern Reporter, 1047, this court considered the question of limitation against the administrator during the period here involved; we had before us the same facts now presented on the issue of limitation, and we held in that case that the title claimed through the administration was barred by limitation of five years. This holding necessarily embraced the proposition that the statute of limitations was operative against the administrator during

the period now in question, and as the facts here urged as sufficient to suspend the operation of the statute were before us in that case, the decision there rendered must be regarded as holding that such facts did not suspend the operation of the statute of limitations. As this is the only question now presented in this case, it would seem to be sufficient to base our present decision upon that rendered in Robb v. Henry; especially, in view of the fact that a writ of error was applied for in that case, upon the identical proposition here urged, and it was refused by our Supreme Court. But in deference to the distinguished counsel who urges that a mistaken view has been taken of the question, and insists upon this court correcting the mistake, we have again carefully considered the proposition, in the light of the authorities cited, and all other pertinent authorities accessible to us. In the Robb case there is no discussion of the particular proposition here so earnestly insisted upon by counsel. In that case, the legal proposition was merely announced that the statute of limitations will run against administrators, and the general conclusion was pronounced upon the facts, that limitation had run in that case and barred the title claimed through the administrator. As we did not, in that case, express our views upon the special contention here made, we shall cheerfully do so in this opinion.

The theory of counsel is, that the administration was interrupted, and the administrator prevented from protecting his possession of the land by proceedings in court instituted and carried on by the heir of the decedent, under whom defendant in error holds by a purchase made pending such proceedings; and for this reason the statute of limitations did not run against the administrator. It was shown that the administration was granted upon the estate in 1880; and it was offered to be proven that in 1882 Mary P. Fortson, the only heir, filed suit in the court wherein the administration was pending, attacking the validity of the administration and seeking to have it declared null and void and the administrator dismissed; and that this litigation over the validity of the administration lasted until June, 1889, when it finally terminated in favor of the administrator.

This state of facts is, of course, not to be found among the expressed exceptions to the operation of the statute of limitations. Rev. Stats., art. 3352. But it is contended, as we understand the theory of counsel, that it is a primary principle of the law of limitations, that until there is some one legally competent to sue upon the cause of action claimed to be barred, limitation does not run; and if the person legally entitled to sue be prevented from doing so by proceedings in court instituted by the person claiming the benefit of the statute, or those from whom he purchased pending such proceedings, that this would constitute an equitable exception to the operation of the statute which our courts should recognize and enforce.

The authorities on this subject are not by any means uniform. The doctrine that implied and equitable exceptions, which the Legislature has not expressed in the statute, are to be engrafted by the courts on statutes

of limitation, has been repudiated by courts of good repute and authors of high standing. See note b, Endl. on Interp. of Stats., sec. 9, p. 13, citing Sedg. on Const. of Stats., etc., p. 277; Dozier v. Ellis, 28 Miss., 730; McIver v. Regan, 2 Wheat., 25; Allen v. Miller, 17 Wend., 202.

But it is unnecessary to go into the reasons and principles which should form the basis for determining the true doctrine which should be declared along this line. It is sufficient for us to say that the Supreme Court of our State has clearly recognized and enforced the principle that where one is restrained by process of court from suing upon his cause of action, limitations do not run against him while so restrained. In Williams v. Pouns, 48 Texas, 146, it is said: "It is well settled, that when a party is enjoined from bringing suit upon a note, that such injunction suspends the statute of limitations during the time that it continues in force. High on Injunc., sec. 20. We think the like rule should apply when it is not the bringing of a suit upon the note which is enjoined, but the enforcement of the contract given to secure its payment, and which, though valid and binding, could not, aside from the injunction, be enforced by suit, because it embraced the homestead of appellant."

In the late case of Davis v. Andrews, 30 Southwestern Reporter, 432, Mr. Denman, Associate Justice, discusses this subject at length. The plea of the statute of limitations was sustained in that case upon the ground that the party against whom it was pleaded had not been prevented by the process of the courts from suing upon his cause of action. The opinion recognizes the equitable exception above stated, in this language: "It seems to be a well established rule in equity, however, that where a defendant has procured the issuance of an injunction, restraining the prosecution or the bringing of a suit on a claim, he will not, after the dissolution of the injunction, be permitted to avail himself, on the plea of limitation, of the period of time during which the injunction was in force, provided the plaintiff has not been guilty of laches."

The principle underlying the doctrine and the extent to which it should go are indicated in the following portion of the opinion: "An examination of the above cases will disclose the fact that the relief granted was confined to cases where (1) the original proceeding in equity had prevented plaintiff from bringing or prosecuting the very claim to which defendant seeks to interpose the defense of limitation, and (2) plaintiff was not guilty of laches in proceeding to enforce his rights. The doctrine is based upon the principle declared in 2 Cas. Ch., 217, above cited, that 'the act of the court shall do no prejudice,' and is confined to relief against such acts."

In the case of Bowen v. Clymer, 79 Federal Reporter, 54, the United States Circuit Court of Appeals held, under the same state of facts here under consideration, that the statute of limitations did not run against the administrator of the estate of Earl E. Cravens, deceased. The decision seems to be put upon the ground that the purchaser from the heir must have taken notice of the litigation between the heir and the admin-

istrator involving the validity of the administration, and that with such knowledge his possession could not have been peaceable.

Article 3348, Revised Statutes, defines peaceable possession so that we can not be left in doubt as to the meaning of the term. The article reads: "Peaceable possession, within the meaning of this chapter, is such as is continuous and not interrupted by adverse suit to recover the estate."

Under the meaning of the term "peaceable possession," as defined by the statute, such possession was shown in this case as a basis of limitation. The possession was continuous, and it was not interrupted by any suit for the land. The suit pending when the land was bought by defendant in error from the heir, Mrs. Fortson, was a suit by Mrs. Fortson attacking the validity of the administration, and was not adverse to her vendee. . Such a suit could not have been more unfriendly to the interests of her vendee than the pendency of the administration without such suit; because, if the suit resulted adversely, it would only continue the administration, and we have already seen that limitations would ordinarily run against the administrator and the estate he represents. We can not agree to the principles upon which the United States Circuit Court based its decision. We are of opinion that the facts sought to be shown in the evidence do not show that the administrator was prevented by proceedings in court from protecting his possession of the land involved in the suit. The proceedings instituted in the County Court, wherein the administration had been granted two years previous, and in which the administrator had duly qualified, did not prevent the administrator from taking legal steps to protect the possession already acquired under such administration. His capacity as administrator might have been questioned in a suit instituted by him to recover the land; but the question of his right to obtain and continue the administration could not have been collaterally brought in question. The fact that he was administrator could have been questioned, but beyond the decree granting the administration and appointing him as administrator the inquiry could not extend. His power and authority as administrator, derived from the order of appointment, and his qualification thereunder, in 1880, were not nullified or suspended during the pendency of the litigation to overthrow the administration. Having been duly vested with the power and authority of administration, such power and authority would continue in him until abrogated by a final judgment of a court of competent jurisdiction terminating the litigation over the matter. The fact that the administration was adjudged void and the administrator dismissed by a judgment rendered during these proceedings, which was appealed from by the administrator, did not have the effect to annul or suspend his functions as administrator pending the appeal. There was no such finality in such a judgment as would prevent him from exercising his powers as administrator; the judgment finally terminating the litigation alone could have that effect. Railway v. Jackson Bros., 85 Texas, 605.

With the principles announced as a basis, it is our opinion that the facts offered to be proven would not have been sufficient answer to the

plea of limitations. We are still of the opinion that a correct result was reached in the Robb case; and we have taken this opportunity to express the reasons upon which our decision was based.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

#### Delivered December 4, 1897.

FINLEY, CHIEF JUSTICE.—We have thoroughly considered the questions involved in this case, and see no reason to change the disposition we have heretofore made of it; the motion for rehearing will therefore be overruled.

Counsel for the motion say that in the opinion rendered the court does not express its views upon the proposition urged by them, that the doctrine of lis pendens applies to the purchase of the land from the heir during the pendency of the litigation between such heir and the administrator, and they ask us to give a reason why the principle does not apply.

In our judgment, lis pendens has no application in this case. Neither the title nor the possession to the tract of land here in question was involved in the litigation between the heir and the administrator. The issue involved in that litigation was, whether the administration upon the estate of Earle Cravens should be vacated and annulled because of alleged irregularities and fraud. Of course if the litigation has resulted in vacating the administration, the administrator would have ceased to have the legal right to the possession and control of the property generally belonging to the estate of Earle Cravens, deceased. In other words, the contest was over the issue whether Alford should continue to exercise the functions of administrator of the estate of Earle Cravens, deceased, and there was nothing in the proceedings directly involving the title or possession to this tract of land. Any judgment which could have been rendered in such proceedings would not have concluded the issue of title or possession to the particular land in controversy. Counsel quote this definition of the doctrine of lis pendens: "The underlying, if not the sole object of the maxim, 'pendente lite nihil innovetur,' is to keep the subject of the suit, or res, within the power of the court until the judgment or decree shall be entered, and thus to make it possible for courts of justice to give effect to their judgments and decrees. The necessity of the rule for this purpose is manifest and its enforcement imperative." 13 Am. and Eng. Encyc. of Law, 70.

We agree that this gives a correct general idea of the doctrine. The doctrine is said to arise out of necessity, and is constructive notice to the world of the issues involved in pending litigation, and he that purchases property which is the subject of the litigation from one of the parties litigant, takes title subject to the judgment which may be therein rendered. The property so purchased must be the subject of the con-

troversy to be settled by the suit, and it will not do that a collateral question only is involved which may ultimately affect the title of the party litigant to the property purchased. In Hoffman v. Blume, 64 Texas, 335, 336, it was held that the pendency of an action of "forcible detainer" did not give notice to a purchaser of the land from the plaintiff in the action, during its pendency, of the defendant's claim of title to the property.

In Russell v. Kirkbridge, 62 Texas, 459, it is said: "It is urged that the pendency of this suit was notice to Weaver at the time of his purchase. This view we think can not be sustained. Lis pendens is but constructive notice, and to make it available, we may say, as was well said in Lewis v. Mew, 1 Strobhart's Equity, 183, 'that the specific property must be so pointed out by the proceedings as to warn the whole world that they meddle with it at their peril. This is necessary to justice; for as liberty is very much, though necessarily, invaded by executing a decree over a party's head, without allowing him even a hearing, it is but fair to grant him the means of informing himself when he is in a likely way of getting into such danger.' The following cases are to the same effect: Griffith v. Griffith, 1 Hoff. Ch., 160; Edmonds v. Crenshaw, 1 McCord's Ch., 264."

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.