D. KELLOGG LEITCH et al., Respondents, *v.* HENRY WELLS,
President, etc., et al., Appellants.

Where a certain sum is bequeathed to executors in trust, to pay the interest
   thereof at a fixed and stated rate to one, and upon his death to divide
   the principal among others, the executors cannot, without the consent of
   the *cestuis que trust,* or, in case they are infants, without an order of the
   court, set apart and appropriate bank stocks to the satisfaction
   of the trust, and release the residue of the estate from its liability to per-
   form the trust.

The *cestuis que trust* may assent to and accept such an appropriation; but
   if, before this is done, new interests and new parties have intervened,
   the situation of the property at the time of such intervention must
   determine the rights of all who claim to be interested in it.

An executor has a right to sell and transfer stocks and other securities of
   the estate, and one who buys in good faith, paying in money the price
   agreed upon, or who loans money upon security of the property, is not
   responsible for the application of the purchase-money or money loaned,
   and his right to the property transferred is not affected by knowledge
   upon his part, of the existence of a claim for a legacy or a debt against
   the estate generally.

As coverture does not prevent the acquisition of property by a
   married woman, the fact of coverture does not affect the title
   to stock transferred by her; and where the stock stands in her name the
   certificate is evidence of its absolute ownership by her; and in case there
   is nothing in it or connected with it indicating a trust in favor of another
   person, one loaning money upon pledge of the stock as security is
   warranted in making the loan upon the assumption of such ownership;
   he is not bound to inquire and ascertain how she obtained it.

SICKELS—VOL. III.      74

The commencement of an action by the service of a summons does not create a *lis pendens* affecting third persons not parties to the action. To bind a purchaser *pendente lite* by the judgment, there must also be a bill or complaint on file at the time of his purchase, in which the claim upon the property is set forth.

The rule of *lis pendens* is a hard one, not a favorite of the courts, and a party claiming the benefit of it must clearly bring his case within it. In the absence of proof, therefore, it will not be presumed that the complaint was filed prior to the entry of judgment.

Stocks are articles of commerce, passing from hand to hand like commercial paper, and the doctrine of constructive notice by *lis pendens* is not applicable to them. (EARL, C.)

The legal title to the stock of a bank passes by an assignment and delivery of the certificate therefor, although there be no transfer upon the books of the bank.

(Argued January 9, 1872; decided May term, 1872.)

APPEAL by the defendant Henry Wells from judgment of the General Term of the Supreme Court in the fifth judicial district, affirming a judgment of Special Term in favor of the plaintiffs.

The action was brought in September, 1864, by the plaintiffs, children of Catharine K. Leitch, deceased, to compel a transfer by the defendant to them of 107 shares of the capital stock of the Tompkins County Bank, and 73 shares of the capital stock of the Bank of Syracuse, of the par value of $100 per share, and for an account and payment of the dividends received thereon.

The complaint alleged substantially that the said stock, and fifty shares of the capital stock of the Onondaga County Bank, also of the par value of $100 per share, amounting to the aggregate par value of $25,000, had, previous to the tenth day of October, 1850, been set apart, designated and appropriated by the executors of the will of Daniel Kellogg, deceased, as a trust fund of that amount given by him to them for the benefit of the said Catharine K. Leitch (who was his daughter) during her life and of her children after her death; that John Kellogg, one of the said executors, subsequently, and during the year 1858, transferred the said stock, with twenty-six shares of the Bank of Syracuse, and fifty-five shares

of the Onondaga County Bank, additional, belonging to the estate of Daniel Kellogg, to Paulina W. Kellogg, his wife, on the transfer books of the said banks, respectively, without her knowledge, and without any consideration given therefor, and he received the scrip therefor in her name in the usual form ; that after such transfer had been made, the said Paulina W. Kellogg, at the request of the said John Kellogg, her husband, signed blank powers of attorney, in the usual form for the transfer of stock in incorporated companies; that the said stock continued to stand in her name at the time of the commencement of this action, but the said scrip had never, in fact, been in her possession.

It then alleged that, on the 29th day of November, 1861, the said Catharine K. Leitch, and the plaintiffs in this suit, commenced their action against the said John Kellogg, and Paulina W. Kellogg, and duly impleaded them in respect of the said stocks so set apart and appropriated by said executors of said Daniel Kellogg, in satisfaction of said legacies of $25,000 for the benefit of said Catharine and her children. And then after stating that, subsequent to the joining of issue in the said action, and after the death of said Catharine K. Leitch (who died intestate on the 3d day of October, 1862), a supplemental complaint was, by order of the court, filed and served, by which D. Kellogg Leitch and David K. Kellogg, duly appointed administrators of the said Catharine, were substituted as plaintiffs in the said action, in the place of said Catharine, deceased ; that answers were put in to said supplemental complaint, and that issue was duly joined therein; it is alleged that such proceedings were thereupon had in said action that afterward and on the 12th day of September, 1864, final judgment was entered in said action, by which it was ordered and adjudged that, by the setting apart of said stock by the said executors, to wit, the said 127 shares of the capital stock of the Tompkins County Bank, the said seventy-three shares of the capital stock of the Bank of Syracuse, and the fifty shares of the capital stock of the Onondaga County Bank, the same were held by the said John Kellogg from the time

of such setting apart until the death of the said Catharine K. Leitch, in trust, to pay the annual income thereof to the said Catharine K ; and that upon her death the plaintiffs in the cause, her children, became the owners of and vested with the absolute title to the said stocks, and that the same, from that time to the present, have continued to be, and are, still vested in these plaintiffs, together with all unpaid dividends thereon, and that the pretended sale and transfer of said stocks by the said John Kellogg to the said Paulina was void and vested in her no title to the same.

It is then alleged that since the commencement of said action against the said John Kellogg and the said Paulina W. Kellogg, and while the said action was pending, to wit, some time in the year 1863, the said John Kellogg, assuming to act as attorney for the said Paulina, under said blank powers of attorney, assigned the scrip for the ninety-nine shares of the stock of the Bank of Syracuse, so held by him in the name of Paulina, to the defendant the American Express Company, and delivered to them the said scrip, and that in the month of April, 1864, while said action was also pending, he in like manner assigned the scrip for 107 shares of the capital stock of the Tompkins County Bank to the said American Express Company, delivering in like manner said scrip to them.

And the plaintiffs then, after stating that the said company still held the said scrip at the time of the commencement of this action, that they claim to own and be entitled to the same stock, and to have the same transferred upon the books of said banks, and had demanded the allowance of such transfer by them, and after making some allegations in denial of the title of the company, and asserting their own, asked judgment, declaring said stock to be their property, and directing the delivery of said scrip to them.

The defendant Henry Wells answered the said complaint, admitting the transfer and delivery by Paulina W. Kellogg to the American Express Company of 124 shares of the capital stock of the Bank of Syracuse in 1862, and of 107 shares of

the capital stock of the Tompkins County Bank in 1864, but denying that they are the property of the plaintiffs, and all knowledge or information sufficient to form a belief whether the same be the shares or scrip of stocks mentioned in the complaint. All the other allegations in the complaint were put in issue.

·The defendant answered and alleged as a further and separate defense, that the said scrip for the 124 shares of the stock of the Bank of Syracuse, with a regular assignment and transfer thereof, and a power of attorney authorizing and directing a transfer thereof to the express company attached, was, on or about the 20th day of May, 1862, delivered to it as collateral security for the loan of $11,000, then made to the said John Kellogg, and that the scrip for the said 107 shares of the stock of the Tompkins County Bank, with a like assignment and power of attorney attached, was, on or about the 25th day of March, 1864, delivered to the said company as collateral security for a loan of $10,000, then made to said John Kellogg ; and he alleges that the said company made said loans in good faith, upon the faith of the security of the said shares of said stocks, and well believed at the time that the said John Kellogg had right, authority and power to deliver the same as security therefor ; that the said company had no knowledge of any of the matters set up in the complaint, or of the claim of any other person to the said stocks, and had no reason to believe that the plaintiffs, or any other person than said Kellogg, had any interest in said stocks, that the said loans remained wholly unpaid, and that the first knowledge the said company had of any claim of the plaintiffs to said stocks was the commencement of this action.

The issues were tried at a Special Term, and the following facts were found :

That the principal allegations of fact in the plaintiffs' complaint were proved, except that the scrip for the seventy-three shares of the stock of the Bank of Syracuse was delivered to the American Express Company on the 30th day of May, 1862, instead of the year 1863, as stated in the said complaint.

Second. That the said scrip in question was received from John Kellogg, by the American Express Company, as collateral security for loans of money, made at the time by said company to said Kellogg, without any actual knowledge on the part of said company of the pendency of the suit of Catharine K. Leitch and the present plaintiffs against John Kellogg and Paulina W. Kellogg, his wife, mentioned in said complaint, or of any claim of the plaintiff in this action, to the stock in question, or that John Kellogg was an executor and trustee under the will of Daniel Kellogg, deceased.

Third. That the plaintiffs in the said action obtained no injunction restraining the transfer of the stock during the pendency of the action, nor did they apply for a receivership of the stocks.

And upon these facts the said judge found as conclusions of law : 1st. That the said stock was a trust fund in the hands of the executors of the will of said Daniel Kellogg, and the survivor of them, for the payment of the legacy of $25,000 bequeathed by him to the said Catharine and her children, the plaintiffs in this suit. 2d. That the assignment of the said stock by John Kellogg to his wife, Paulina W. Kellogg, was fraudulent and void, as against the *cestuis que trust*, Catharine K. Leitch, and her children the plaintiffs, and transferred in fact no valid title in said stock to her. 3d. That the assignment of the said scrip of stock by John Kellogg in the name of his wife, Paulina W. Kellogg, to the American Express Company, did not vest any legal title to the same in said company, and if thereby any equitable title in said stock was vested in said company, it was subordinate to the paramount equity of the plaintiffs in this suit to said stock. 4th. That the said company having received the said scrip during the pendency of the action commenced by Catharine K. Leitch in her lifetime, and the plaintiffs in this suit against John Kellogg and Paulina W. Kellogg, his wife, the judgment in that suit is conclusive upon the claim of the said company in this present action. 5th. That the plaintiffs were entitled to a judgment directing a transfer of the said stock by the company to the

plaintiffs and for the payment of the dividends accrued thereon with costs against the defendant Henry Wells, as president of the said company.

Exceptions were duly taken to the several conclusions of law. Judgment was subsequently entered in conformity with the decision.

*Hooper C. Van Vorst* for the appellants. The stocks in question were not held by John Kellogg in trust. (*Diven* v. *Lee*, 36 N. Y., 302; *Talbot* v. *King*, 1 Hand, 76.) A trustee may dispose of a trust estate to a *bona fide* purchaser, without notice, so as to bar the *cestui que trust*. (Story's Eq., §§ 977, 1264; *Oliver* v. *Wells*, 3 How. U. S., 333, 401; 2 Kent, 307; 1 R. S., 728, § 58.) Executors can mortgage or pledge the assets of the estate. (Dayton on Surrogates, 2d ed., 280; *Boget* v. *Hertel*, 4 Hill, 492; Williams on Ex'rs, vol. 2, pp. 838–841; 2 Dickens' Rep., 725; *Hutchins* v. *State Bk.*, 12 °Metc., 421.) No actual transfer on the bank books was necessary to perfect defendants' legal title. (Angell on Corporations, § 564; *Sargent* v. *Franklin Ins. Co.*, 8 Pick., 98; *Sargent* v. *Essex R. W. Co.*, 9 id., 202; *Bank of Attica* v. *Smalley*, 2 Cow., 770; *Mt. H. T. Co.* v. *Jewell*, 17 N. J., 117; *Kortright* v. *Corn Bank*, 22 Wend., 348; *Bank of Attica* v *M. & T. Bank*, 20 N. Y., 501.) The doctrine of *lis pendens* does not affect defendants, as it does not appear complaint was filed. (2 Sugden, 544; 1 Vernon, 318; Daniels' Ch., 56; *Hayden* v. *Bucklin*, 9 Paige, 514.) The judgment roll is not evidence against defendants, who were not parties. (1 Greenleaf's Ev., § 522.)

*D. Pratt* for the respondents. The pendency of an action is notice to all persons purchasing the subject-matter of the action after the commencement of the suit. (*Murray* v. *Ballou*, 1 J. Ch., 566, 577; *Same* v. *Lylbern et al.*, 2 id., 441, 445; *Jackson* v. *Andrews*, 7 Wend., 152, 156; *Parks* v. *Jackson*, 11 id., 442, 451, 457; *Stuyvesant* v. *Hall*, 2 Barb. Ch., 151; *Metcalf* v. *Pulveroft*, 2 Ves. & Beams, 200;

*Gaskill* v. *Durdin*, 2 Ball & Beat., 147; *Harrington* v. *Slade*, 22 Barb., 161; *Jackson* v. *Lassee*, 4 Sand. Ch., 381; *Hayden* v. *Bucklin*, 9 Paige, 512; *White* v. *Carpenter*, 2 id., 217, 252; Tiff. on Trustees, 821.) The absolute owner of property may convert himself into a trustee, without transmuting the possession, by a proper declaration of trust in writing. (Tiff. on Trustees, 354; *Moak* v. *Kittlewell*, 1 Hare, 404; *Suarez* v. *Pumpelly*, 2 Sand. Ch., 336; 4 Hare, 120.) The charter of the Tompkins County Bank and the general banking law make the stock of these banks transferable on the books of the banks only. (Laws of 1836, p. 511, § 27; Laws of 1838, p. 249, § 19.) The interest which passes in such cases by a delivery of the scrip is equitable only. (*Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 3 Kern., 600, 626; *Union Bank of Georgetown* v. *Love*, 1 Wheat., 390; *Stebbins* v. *Phœnix Fire Ins. Co.*, 3 Paige, 350; 2 Conn., 529; 3 id., 544; 5 id., 246; 6 id., 552.) The equity of the plaintiffs, being prior in time, must take the preference. (*Bush* v. *Lathrop*, 22 N. Y., 535; *Muir* v. *Schenck*, 3 Hill, 228, 546.) The husband is incompetent to convey directly to his wife. (*Van Arydale* v. *Wright*, Lalor, 260; *Dempsey* v. *Tyler*, 3 Duer, 73.)

LOTT, Ch. C. The stock in question stood in the name of Paulina W. Kellogg, and the certificates issued by the banks of her title thereto were evidence of its absolute ownership by her.

There was nothing in them, or connected therewith, to show or indicate a trust in favor of any other person. Their production to the express company, with a power of attorney signed by her in the usual form for the transfer of stock in incorporated companies, warranted and justified it in making the loans it did on the assumption of such ownership.

The assignment of those certificates and the delivery thereof to the company, with the said powers of attorney, vested the *legal title* to the stock in the company.

A transfer on the books of the banks was not necessary for

such purpose. (*Kortright* v. *The Commercial Bank of Buffalo*, 20 Wend., 91, and the *Commercial Bank of Buffalo* v. *Kortright*, S. C., in error, 22 id., 348; *McNiel* v. *Tenth National Bank*, decided in Court of Appeals 1871, 46 N. Y. R., 325.)

The fact that Mrs. Kellogg was a married woman did not affect the title of the company thus acquired. Her coverture did not prevent the acquisition of property by her, and a purchaser thereof was not bound to inquire or ascertain how she obtained it.

If it be conceded that she did not hold it as her separate estate, her husband, in that case, might have asserted his marital rights and claimed it as his own, but that, under the circumstances disclosed in this case, would not invalidate or impair the right of the company. His agency in making the transfer would estop him from questioning it. (See *Edgerton* v. *Thomas*, 5 Seld., 40.)

It is, however, claimed that the defendant's title is affected by the judgment in the suit of Catharine K. Lietch and the plaintiffs in this action against John Kellogg and Paulina W. Kellogg, referred to in the complaint, on the ground that the stock in controversy was purchased during its pendency.

That claim or position is not available.

The facts alleged in the complaint do not show nor is it found by the judge who tried this action that a *lis pendens* was created by that suit.

The only allegation in reference to it is "that on the 29th day of November, 1861, the said Catharine K. Leitch and the plaintiffs in this suit commenced their action against the said John Kellogg and Paulina W. Kellogg, and duly impleaded them in respect of the said stocks, etc." There is no averment or any statement showing *when* the complaint therein was filed, and, by reference to the judgment record, it appears from the summons that it was not filed when that was served, and it is shown by the complaint itself that it was not verified till the 12th of March, 1862. The commencement of the action by the service of the summons did not create a *lis*

*pendens* affecting third persons, not parties to the action. The filing of the complaint was necessary for that purpose. (See 1 Vernon, Ch., 318; Bouvier's Law Dict., title "Lis Pendens," 14th ed., vol. 2, 76; *Murray* v. *Ballou*, 1 Johns. Ch. R., 566, etc.; *Murray* v. *Lylburn*, 2 id., 441; *Hayden* v. *Bucklin*, 9 Paige, 512, 514; 4 Bouvier's Inst., 514, 516.)

It may also be stated, in this connection, that the complaint, after stating the claims of title by the defendant to the stock under the transfer of the scrip or certificates of stock, impeaches its validity on the sole ground that "neither the said John Kellogg nor Paulina W. Kellogg had any right or title thereto, and therefore could confer no right or title thereto to said Express company," and that the said stock was then the property of the plaintiffs; and the proceedings and judgment in that action appear to be stated as part of the plaintiffs' title, and not for the purpose of charging that the Express company was bound by the judgment. It is, however, unnecessary to pursue the inquiry. It is sufficient to say that the allegations in the complaint and the findings of the court are not sufficient to charge the company with constructive notice of the plaintiffs' rights or title, and it is expressly found that it had no actual knowledge of the pendency of the suit, or of any claim by the plaintiffs to the stock in question, or that John Kellogg was an executor and trustee under the will of Daniel Kellog, deceased.

Having arrived at this conclusion, it is unnecessary to consider whether the allegations in the complaint in that suit are sufficiently specific to charge third persons with notice of the plaintiffs' claim.

The judgment must, on the ground stated, be reversed and a new trial ordered, costs to abide the event.

Hunt, C. In August, 1858, John Kellogg transferred to his wife, Paulina W. Kellogg, seventy-three shares of the capital stock of the Bank of Syracuse. In May, 1859, John Kellogg transferred in like manner to his wife 107 shares of the capital stock of the Tompkins County Bank. The trans-

fers were duly made on the books of the respective banks, and new certificates issued in the name of Mrs. Kellogg, which were delivered to her or her agent.

The defendants afterward advanced $21,000 upon the security of a transfer of these certificates, and an authority to transfer them to themselves on the books of the banks, viz., on the 30th of May, 1862, $11,000 upon the stocks first named, and on the 25th of March, 1864, $10,000 on the stock lastly described. The plaintiffs claim that the defendants obtained no title to these stocks, for the reason that John Kellogg held the same as trustee under the will of Daniel Kellogg for their mother and themselves, and that the transfers of the same by John Kellogg were in violation of his duty as trusteee, and that in law the defendants had notice of the interest of the plaintiffs in the stocks. John Kellogg was, also, an executor under the will of Daniel Kellogg. An executor, it is not denied, may make a transfer of personal property which will give a good title to a *bona fide* purchaser, although the transfer is made in violation of the duty of the executor. The executor is the owner of the personal property of the testator; the absolute title vests in him, and he posesses the *jus disponendi* in its full force. The honest purchaser is under no duty to see that the moneys are faithfully applied by the executor. (*Bogert* v. *Hertel*, 4 Hill, 492; 2 Wms. Exrs., 838, 841.) Assuming it to be a trust, the argument, if I correctly understand it, in addition to the point of notice, is this, that the trust became executed, the absolute ownership vested in Mrs. Leitch and her children, and consequently John Kellogg had no title whatever, and none could be transferred by him. In this view, the question was presented prominently, was this specific stock held by John Kellogg as trust property under the will of Daniel Kellogg? It amounts to a claim that the stock is to be dealt with as if Daniel Kellogg, in creating the trust referred to, had, by his will, set apart and devoted this stock to the satisfaction of that trust.

Daniel Kellogg died in 1836, leaving a very large estate.

By his will, made ten years before his death, he made disposition of his property chiefly to his wife and his seven children. The will, in its first clause, appointed John Kellogg, George F. Leitch and David A. Comstock executors of the same. It also contained, among others, the provision following: "I give and bequeath unto the said John Kellogg, George F. Leitch and David A. Comstock, their executors and administrators, the sum of $25,000, upon trust, to pay the interest, at the rate of seven per cent per annum, of the said sum of $25,000, to my daughter, Catharine K. Leitch, for her sole and separate use during her life, exclusive of her husband, and for which her receipt alone shall be a sufficient discharge, and from and after the decease of my said daughter Catharine, then, as to the said sum of $25,000, in trust for her child or children living at her death; if more than one, equally to be divided between them; but if she shall not have a child living at her death, then my will is that $5,000 of said sum shall be paid to her husband, if any living, and the remainder of the sum of $25,000, being $20,000, shall sink into, and become and be part of the residue of my personal estate; and if she shall not have a child or husband living at her death, then my will is that the said sum of $25,000 shall sink into and become and be part of the residue of my personal estate."

The testator made a provision in the same language for his daughter, Mrs. Converse, and also for his unmarried daughter, Sally Maria Kellogg.

The executors took charge of all of the estate of Mr. Kellogg, and there is no evidence of any interference with them until the year 1848. In that year a bill was filed by Augustus Converse, as administrator of his wife, a daughter of Daniel Kellogg, the daughter having died in January of that year. After setting out the will of Daniel Kellogg, the complaint alleged, among other things, that the executors had taken upon themselves the execution of the will, that the personal estate was of the value of $450,000 dollars, and claimed to recover the distributive share of his wife in the

estate.   The defendants answered, and a reply was put in.
In May, 1850, a petition was presented in the same suit, in
which the insolvency of each of the executors is alleged, and
praying the appointment of a receiver to take charge of the
property of the estate.  It was ordered that Mr. Leaven-
worth be appointed such receiver, and that the executors
transfer to him all the property and effects of the estate,
under the order of Mr. Outwater, as referee.   On the 10th of
October, 1850, such conveyance and transfer was made by the
executors, with certain exceptions.   It is upon and by means
of the effect of such exceptions that it is claimed that the
stocks in question became impressed with the trust for
$25,000, in favor of Mrs. Leitch and her children.   The
exceptions are as follows: "Excepting and reserving, how-
ever, from this assignment, a certain fund of $25,000, con-
sisting of shares of capital stock in the Tompkins County
Bank, amounting to $12,700, and shares of the capital stock
of the Bank of Syracuse, amounting to $7,300, and shares
of capital stock in the Onondaga County Bank, amounting
to $5,000, making the said sum of $25,000, with the certifi-
cates and vouchers pertaining thereto, which fund has been
set apart, designated and appropriated, by the said parties of
the first part, as such executors and trustees as and for the
sum of $25,000, given to them in and by the said will of
Daniel Kellogg, in trust, to pay the interest thereof to Catha-
rine K. Leitch, wife of the said George F. Leitch, during her
life, and then in trust for her children, and which fund is not
to pass under this assignment."   The stocks described had
not then been, and never were, in fact, set apart and appro-
priated by the executors for the purpose stated.   The Con-
verse suit was subsequently settled by the parties, and the
assets and effects transferred to Mr. Leavenworth were by
him so transferred to the executors.

   I agree with the learned judge, who delivered the opinion
in the court below, that a fair test to determine whether these
stocks became specifically devoted to the satisfaction of this
trust is this, if the banks had failed and the stocks become

worthless, would the loss have fallen upon Mrs. Leitch and her children? If yes, then are the stocks referred to impressed with the trust; if not, they are not.

In determining this question, certain further facts are to be considered:

1. That no order of the court directed this exception or reservation. The order was general, that the executors convey all the estate of Mr. Kellogg, in their hands, without qualification or limitation. The exception was voluntary, and the recital is the voluntary declaration of the executors.

2. There is no judicial recognition of this exception. There is no evidence that the document in which the statement is made was presented to or sanctioned by the court.

3. D. Kellogg Leitch, George F. Leitch and David H., the plaintiffs in the present suit, were neither of them parties to the Converse suit in which this action occurred. This exception was made in an instrument executed in October, 1850. At that time, D. Kellogg was of the age of fifteen; George F. of the age of seven, and David H. of the age of ten years.

4. The interest of these children in the $25,000 was a vested estate. Although they could not enjoy the fruits during the life of their mother, the title vested at once upon the birth of each, and the estate in the infant was as perfect in law as if there were no intermediate life interest.

5. At that time, the estate of Daniel Kellogg owned 127 shares of the Tompkins Bank stock, and ninety-nine shares of the Syracuse stock, and 105 shares of the Onondaga Bank stock, of the total value of $33,100, all of which were transferred by John Kellogg to Paulina W. Kellogg. What became of the remaining twenty shares of the Tompkins Bank stock, and the remaining twenty-six shares of the Onondaga Bank stock, does not appear. Whether these remaining shares are supposed to be impressed also with the trust—whether they have been applied to the discharge of the debts or other trusts of the estate, or whether they have been squandered, does not appear. The

aggregate value of these stocks was $8,100 more than the amount of the original trust. By Mr. Kellogg's will a trust was created, but no particular property was appropriated for its satisfaction. The interest on the same, given at seven per cent, was to be paid to Mrs. Leitch, $1,750. These stocks might yield more or might yield less, or might be lost by failure of the banks, still the full sum of $1,750 must be paid annually to Mrs. Leitch or to her children. I doubt not that, by the formal consent of Mrs. Leitch, certain property might be set apart and appropriated by the executors to the satisfaction of the trust. (*Wood* v. *Wood*, 5 Paige, 596.) Surely no such appropriation could be made by the executors without her consent, which should have the effect to release the residue of the estate from its liability to perform the trust. I do not find any evidence in the case that Mrs. Leitch consented to accept these stocks for that purpose. The Converse suit was settled and was discontinued—Mrs. Leitch's attorney assenting. This was, doubtless, an assent on her part to everything necessarily dependent upon such settlement. What the terms of that settlement were is not shown by the case. Mr. Converse obtained such satisfaction of his wife's interest in the estate as he was willing to accept. There is nothing to indicate that the exception and declaration of trust referred to was an essential part of the judgment, or that it was communicated to or understood by Mrs. Leitch. The contrary plainly appears by the statements in the original bill filed by her in March, 1862, and the supplemental bill filed in November, 1863. If there had been a failure of these banks, Mrs. Leitch would have still been entitled to the annual sum of $1,750 from the estate. Mrs. Leitch's life interest being at an end, her children, who were minors during the pendency of the Converse suit, now claim the $25,000. It has been decided by the Court of Appeals, in *King* v. *Talbot* (40 N. Y. R., 76), that it is a violation of duty in a trustee or executor to invest the funds under his control in bank stock. If he assumes to do so, the investment is at his risk, and the ward or infant can repudiate it on reaching his

majority. If the $25,000 had been invested in 1858 by the trustees specifically in these bank stocks, such investment could not have been valid, much less can it bind the infants when it is a mere statement that there is a setting apart of such stocks already in their hands, and made without the knowledge or consent of the infants. An infant's consent cannot justify what would otherwise be illegal, but it certainly cannot relieve an illegallity that there is no pretense of such consent. (Hill on Trustees, 382 [585]). The form of property devised to infants cannot be changed even by legislative authority, although the same trusts are impressed upon the property, in its changed form, as originally existed. (*Smith* v. *Brown*, 35 N. Y., 83.)

It is my judgment that there was never a legal appropriation of the stocks in question to the satisfaction of this trust. They remained in the hands of the executors as assets in their charge.

There has been no acceptance by the plaintiffs, nor any assent by them to the appropriation by the executors of these stocks to the satisfaction of the trust, until after the defendants' rights had attached. New interests and new parties having intervened, the situation of the property at the time of such intervention must determine the rights of all who claim to be interested in it.

By the judgment upon the report of the referee in the suit of *D. Kellogg Leitch et al.* v. *John Kellogg and Paulina Kellogg*, dated July 22, 1864, it was adjudged that the stocks in question were impressed with the trust in favor of Mrs. Kellogg and her children, and that the transfer to Paulina Kellogg was void; that Mrs. Leitch and her children were entitled to all the dividends previously made upon the stocks. By the original complaint made in that suit, verified March 12, 1862, it was charged that John Kellogg had received into his individual possession 300 shares of the capital stock of the Bank of Syracuse, value $100 per share; 100 shares of Onondaga Co. Bank, value fifty dollars a share; 1,200 shares of Auburn Bank; 127 shares of the Tompkins

County Bank; that from time to time he made transfers to his wife which were fraudulent. It is alleged that the Tompkins Bank stock was set apart as a trust fund in favor of Mrs. Kellogg and her children. Nothing was said in the complaint about the stock in the Bank of Syracuse.

Unlike trustees, who must act unitedly, one executor may effectually bind or dispose of the assets of the estate by his single act. (Hill on Trustees, 306 [466]; 2 Wms. Exrs., 620.)

The stocks in question were transferred by John Kellogg to Paulina W. Kellogg. By her they were transferred to the defendants, who advanced their money on the faith of the security, without knowledge that John Kellogg was executor, that Paulina was his wife, that there was any litigation or question from any source respecting it. Ordinarily this would give the defendants a right to hold the stocks to the amount of their advance. The executor has the right to sell and transfer, and one who buys of him in good faith, and pays in money the price agreed upon, is not responsible for the application of the purchase-money. (Authorities *supra*.) The same rule applies to one who loans money on the security of the property. (*McNeil* v. *Tenth National Bank*, 46 N. Y. R., 325.)

It is said that the commencement of the suit in December, 1861, by Mrs. Leitch and her children, was notice to all the world, the defendants included, of the claims of the plaintiffs upon this stock *as cestuis que trust;* that in the theory of law the defendants bought with notice of all the facts, and stand in the same position as if they had received actual notice of them. If I am right in my opinion, that these stocks were not specifically subject to a trust, this question does not arise.

It would then be the case of property held by an executor, and a claim for a legacy or a debt against the estate generally. This does not prevent a transfer of any portion of the estate to one aware of these facts. If it exists in the case, the question of *lis pendens* is an embarrassing one.

There is no doubt of the general rule, that a purchase *pen-*

*dente lite* does not vary the rights of the plaintiff in the suit, who is not to receive any prejudice in the suit from the alienation, and that, although he pays his money in good faith, the purchaser is bound by the judgment in the suit. The statute of this State makes a material alteration of this rule in regard to real estate, by enacting that the pendency of a suit is not notice to a stranger until the notice of *lis pendens* is actually filed in the clerk's office of the county where the land is situated, and that, as to one having no actual notice, he may, in good faith, and for a good consideration, acquire a good title, until such notice is filed. (Code, § 132.)

This relaxation of a rigorous rule applies to real estate only, and, as to personal property, the rule remains as at the common law. It is conceded to be a harsh rule, and one that sometimes operates unjustly. It was based, no doubt, upon the theory that the register's office, like the recording office now, was open to examination, and that the proper attention, in looking there, would protect the purchaser from injury. Hence it was established, as a part of the rule, that for this purpose a suit was not to be deemed as commenced until the bill was actually filed. A subpœna was the actual commencement of the proceeding, but, for the purpose of charging one not a party to the suit with notice of the proceeding, the suit was deemed to have been a suit commenced only from the time of the bill filed. Thus in *Murray* v. *Ballou* (1 Johns. Ch., 566), cited in the opinion below, Chancellor Kent says : " Admitting that Ballou had no knowledge, in fact, of the suit of *Mrs. Green* against *Winter*, he is nevertheless chargeable with legal or constructive notice, so as to render his purchase subject to the event of that suit. The established rule is, that a *lis pendens*, duly prosecuted, and not collusive, is notice to a purchaser, so as to affect and bind his interest by the decree ; and the *lis pendens* begins from the service of the subpœna after the bill is filed.

The chancellor says, this is no more than an adoption of the rule of the common law, where, if the defendant aliens after pendency of the writ, the judgment in the real action

will over-reach such alienation.   It was one of the ordinances
of Lord BACON, he says, laid down for the better administra-
tion of justice in the Court of Chancery, that "no decree
bindeth any that cometh in *bona fide* by conveyance from the
defendant before the bill exhibited, and so made no party,
neither by bill nor order ; but where he comes in *pendente lite*,
and while the suit is in full prosecution, and without any color
of allowance or privity of the court, then regularly the decree
bindeth." (Bacon's Works, vol. 4, p. 511.)   This the Chan-
cellor declares to be the rule, and it makes the liability of the
purchaser to depend upon the fact that the bill has been exhib-
ited previously to the purchaser.   The case of *Culpepper* v.
*Austin* (2 Cas. in Ch., 115) is cited in the same book, where
a testator had conveyed his lands to an executor, in fee, to
pay his debts, and the defendant purchased of the trustee for
a valuable consideration.   The heir filed his bill to have the
land, on the ground that it was not needed to pay debts.
The defendant lost his purchase, having purchased and paid
on the same day the bill was exhibited.   (1 Johns. Ch., 578.)
In the same opinion are cited: *The Bishop of Winchester* v.
*Paine* (11 Ves., 194) ; *Preston* v. *Tubbin* (1 Vern., 286); *Anon.*
(1 id., 318); *Self* v. *Madox* (id., 459) ; *Finch* v. *Newnham* (2
id., 216); in each of which it appears that the bill had actually
been filed before the purchase was made.

In *Hayden* v. *Bucklin* (9 Paige R., 513), the chancellor
says : "The only question, therefore, for consideration is,
whether the mere issuing of the subpœna is to be deemed a
*lis pendens* in this court, so as to affect the validity of a trans-
fer of the subject-matter of the litigation here as a purchaser
*pendente lite*." It was held that it was not.   There the trans-
fer had been made intermediate the issuing of the subpœna
and its service.   (See also *Hopkins* v. *McLaren*, 4 Cowen R.,
667.)

By the statute, 4 Anne (cited *Hayden* v. *Bucklin, supra*),
it was enacted that no subpœna should be issued until bill
filed, save in excepted cases.   In other words, the filing of
the bill was the commencement of the suit.   Such was, for a

long period of time, the practice in this State, until the adoption of the new system of practice in 1848. (1 Barb. Ch. Practice, 1.) Under this practice, the rule was uniform that where a bill was filed and a subpœna served the suit was deemed to be commenced, and any subsequent acquisition of interest was subject to the decree to be obtained therein.

The rule that might be inferred from the expressions in some of the cases, that after bill was filed the commencement of the suit related back to the issuing of the subpœna, has not, for the purpose we are considering, been adopted as the rule in this State. It would be hard, indeed, where one honestly purchased and fully paid, there being no *lis pendens*, that a subsequent act, to which he is not consenting and of which he had no knowledge, should create a *lis pendens* retroactively, and thereby a purchase become invalid which was perfectly valid when made. It would be hard not only, but in violation of just principle.

By the practice in existence in this State, when the action of Mrs. Leitch against John Kellogg was commenced, it was not required that the complaint should be filed, nor even served, at the commencement of the action. The suit might be commenced by summons alone served upon the defendants, or by summons and complaint served upon the defendants.

In neither case was it required by law or by any rule of court that the complaint should be filed at the commencement of the suit. (Code, §§ 127, 128, 130, as amended in 1849.) When the judgment roll was made up and filed, it was required that the complaint should be therein incorporated as a part of the record. (Code, § 281.) This was indispensable to the making up of the record. By section 416, pleadings are required to be filed in ten days after service, or the opposite party might compel such filing on pain of its abandonment; this section was not imperative. If not filed, the opposite party could compel it to be done, or that the pleadings should be abandoned. As a matter of fact in practice, I believe the complaint was seldom filed or appeared in any other place than the judgment roll.

This practice and the rule of *lis pendens*, by which a purchaser is bound from the filing of the bill, must be adapted to each other. A summons issued and served, and a complaint filed in the clerk's office, by the examination of which a purchaser can ascertain that a claim is made upon the property which he intends to purchase, are necessary under the present practice to bind a purchaser *pendente lite.* In other words, to create the *lis pendens*, which will bind a purchaser to the judgment in such suit, there must be a first process, and a bill or complaint on file in which the claim upon the property is set forth.

So far as the case we are now considering shows, no complaint in the suit of *Mrs. Leitch* v. *John Kellogg* was ever filed until the judgment roll was filed.

This could not have been earlier than July, 1864, as the report of the referee, on which it is based, bears date of that time. The several advances and purchases upon the stocks in question were made by the defendants prior to that time, to wit, in May, 1862, and in March, 1864, respectively. My conclusion is that the rights of the defendants are not affected by the proceedings or by the judgment in that action.

By the instruments executed to the defendants by Mrs. Kellogg, the legal title to the stocks was transferred.

"For value received, I do hereby transfer, sell and assign unto the American Express Company," passes the legal title, although there be no transfer on the books of the bank. These are the apt words for a conveyance *in presenti.* The record at the bank is a formality which may make question with the bank, but is not important as between the vendor and the vendee.

The legal title is perfect without it. (*Kortright* v. *Com. Bk., Buff.,* 22 Wend., 348; *Bank of Utica* v. *Smalley,* 2 Cowen R., 770; *The Bank of Attica* v. *The N. & T. Bk.,* 20 N. Y. R., 50; *Gilbert* v. *Manchester,* I. M. C., 11 Wend., 626; see also *McNiel* v *Tenth National Bk., sup.,* where all the authorities are reviewed.)

The transfer by John Kellogg to Paulina, his wife, was a

complete and executed contract. In any controversy involving an attack on this transfer it cannot be said that this transfer was absolutely void. It gave her the absolute possession and the legal title. It justified an action by her against any one who should interfere with that possession. (*Savage* v. *O'Neil*, 44 N. Y., 298; *Hunt* v. *Johnson*, id., 27), and a transfer to any one making a lawful purchase thereof. If there should be any question on this point, the defendant's claim under the transfer and pledge of the same certificates from John Kellogg himself, which is in evidence as a part of their title, would attach.

If the transfer to his wife is invalid, the title remains in him, and transfer from him to a *bona fide* purchaser is good upon the principles heretofore discussed.

I think there should be a new trial.

EARL, C. The stocks in question do not appear to have belonged to Daniel Kellogg in his lifetime. They belonged to George F. Leitch, who transferred them to the executors in 1847 and 1849. In May, 1850, the executors were ordered to transfer all the assets of the estate of Daniel Kellogg to Leavenworth, who was appointed receiver. In October of the same year they did transfer all the assets to the receiver, excepting and reserving a certain fund of $25,000, consisting of shares of capital stock in the Tompkins County Bank, amounting to $12,700, and shares of capital stock in the Bank of Syracuse, amounting to $7,300, and shares of capital stock in the Onondaga County Bank, amounting to $5,000, making the sum of $25,000, which fund they declared to have been set apart, designated and appropriated by the executors, as and for the sum of $25,000 given to them in and by the will of Daniel Kellogg, deceased, in trust for Mrs. Leitch and her children. The stocks of the two banks first named only are in controversy in this action.

The will contained no direction as to the investment of the fund of $25,000, and hence the trustees were bound to invest it in such securities as were authorized by law, and they had

no right to invest it in bank stocks. (*Diven* v. *Lee*, 36 N. Y., 302; *King* v. *Talbot*, 40 id., 76.) This investment was wholly inoperative as to the *cestuis que trust*, unless they assented to or adopted it. It does not appear that they ever assented to or adopted it, or acquiesced in it until they served their supplemental complaint in the action against John Kellogg and wife; and they never received the dividends upon the stock.

The legal title to the stocks was in the trustees, and they could sell and transfer them so as to give a perfect title to a purchaser taking them for value and without notice of the trust. (Story's Eq. Jur., §§ 977, 1,264; *Oliver* v. *Piatt*, 3 How. U. S. R., 333.) A purchaser from a trustee, with knowledge of the trust, takes the property purchased charged with the same trust.

In 1858, John Kellogg, the surviving executor and trustee, transferred these stocks to his wife, and certificates of stock were then issued to her by the two banks, and thereafter the stocks stood in her name upon the books of the banks. This transfer was valid as against John Kellogg, and gave his wife, as against him, good title to the stocks. He surrendered his certificates of stock and caused the bank to issue certificates to her, and this transfer was as valid, as against him, as if he had gone to the banks and paid his money for the stocks and had the certificates made out in her name and given to her. As, however, she paid no value for the stocks, and took them with either actual or constructive notice of the trust, she took and held them subject to the equities of the *cestuis que trust*.

After the certificates were given to her, she gave a blank transfer, with blank power of attorney, to her husband, and on the 30th day of May, 1862, he pledged the stock of the Bank of Syracuse, and on the 25th day of March, 1864, the stock of the Tompkins County Bank, to the American Express Company, to secure loans made to him at the two dates. These pledges were perfectly good as against John Kellogg and his wife, and they were valid against the plaintiffs, unless the express company can in some way be charged with notice of the trust. The express company had the same right to

take the stocks in pledge, and, to the extent of its interest as pledgee, will be as thoroughly protected, as if it had purchased them for value and without notice.

If it had thus purchased them, it would have taken the absolute legal and equitable title to them, although they were not transferred on the books of the bank. (*Kortright* v. *Commercial Bank of Buffalo*, 22 Wend., 362; *McNeil* v. *Tenth National Bank*, 46 N. Y., 325.)

There is no pretence that the express company, at the time of either of the loans, had any actual notice of the trust; but it is claimed that it had constructive notice by the pendency of the suit of Mrs. Leitch and these plaintiffs against John Kellogg and his wife.

That suit resulted in a judgment in favor of the plaintiffs therein, declaring their interests in and title to the stocks in question. It is a rule in equity, long established and acted on, that a purchase made of property actually in litigation *pendente lite*, although for a valuable consideration and without any express or implied notice, affects the purchaser in the same manner as if he had such notice, and he will accordingly be bound by the judgment or decree in the suit.

This rule is said to rest upon the presumption that every man is attentive to what passes in the courts of justice of the State or sovereignty where he resides, and to be founded upon public policy; for otherwise alienations and transfers of title made during the pendency of a suit might defeat its whole purpose, and there would be no end to litigation. (Story's Eq. Jur., §§ 405, 406; *Murray* v. *Ballou*, 1 John. Ch., 566; *Murray* v. *Lylburn*, 2 John. Ch., 441; *Green* v. *Slayter*, 4 John. Ch., 38; *Hopkins* v. *McLaren*, 4 Cow., 667; *Murray* v. *Blatchford*, 1 Wend., 583; *Jackson* v. *Andrews*, 7 Wend., 152; *Parks* v. *Jackson*, 11 Wend., 442; *Griffith* v. *Griffith*, 1 Hoff. Ch., 153; *Jackson* v. *Losee*, 4 Sand. Ch., 381; *White* v. *Carpenter*, 2 Paige, 217, 252; *Hayden* v. *Bucklin*, 9 Paige, 572; Comyn's Digest Chancery, "Lis Pendens.")

It will be seen by an examination of the cases cited that

the rule has always been considered a very hard one in its application to *bona fide* purchasers for value, and it has only been tolerated by learned judges from a supposed necessity. Chancellor WALWORTH, in *Hayden* v. *Bucklin*, said : " This common-law rule of requiring purchasers, at their peril, to take notice of the pendency of suits in courts of justice for the recovery of the property they are about to purchase, although it is really impossible that they should actually know that such suits have been commenced, has always been considered a hard rule, and is by no means a favorite with the Court of Chancery." This rule has most frequently been applied to purchasers of an interest in real estate, and very rarely, so far as I can learn from reported cases, to purchasers of personal property. As to real estate, it has long since been abrogated by statute in this State, unless a *lis pendens* has been filed in the proper clerk's office. As to personal property, in this age and country of great enterprise and rapid circulation of such property, it is capable of working more mischief than good, and can hardly claim to be founded on necessity or public policy. By injunctions and receivers, transfers of the subject of an action can be prevented during its pendency ; and since parties can be examined as witnesses, actual notice, when it exists, of the action or outstanding equities can more readily be shown than formerly. But the rule has existed for centuries, and we cannot dispense with it in a case where it is fairly applicable. As it is, however, a hard rule, and not a favorite with the courts, a party claiming the benefit of it must clearly bring his case within it ; and it is said that if he makes a slip in his proceedings the court will not assist him to rectify the mistake. (3 Sugden on Vendors, 460 ; *Sorrell* v. *Carpenter*, 2 P. Wms., 482.)

When must a suit, within the meaning of the rule, be deemed pending ? I answer, not until the summons has been served, and the complaint filed. (*Hayden* v. *Bucklin*, 9 Paige, 512, 514.) In chancery, the subpœna performed the office of a summons under our present practice ; and prior to the statute of Anne (4 Anne, ch. 16, § 22), the subpœna was

issued before the bill was required to be filed, and the suit, as against the defendant himself, was then considered as commenced from the date of the subpœna. But after that statute the bill was required to be first filed, and for many purposes the suit was deemed to be commenced from the filing of the bill. (*Hayden* v. *Bucklin*, 1 Barb. Ch. Pr., 33, *supra; Webb* v. *Pell*, 1 Paige, 564.)

There could not, however, be a *lis pendens*, so as to bind strangers to the suit, until both the bill was filed and the subpœna served, and such has been the uniform holding of the courts since that time. It has sometimes been said, and it is now claimed by the learned counsel for the plaintiffs, that when a suit in chancery was commenced by the issuing and service of a subpœna, the bill being filed afterwards, the *lis pendens* was not complete until the bill was filed, but that then it related back and dated from the service of the subpœna. This claim has its sole foundation, so far as I have been able to learn, upon an anonymous case decided in 1685, before the statute of Anne, and reported in 1 Vernon, 319. The whole of that case as reported is as follows:

"That a subpœna served, bill filed is a *lis pendens* against all persons; but the service of a subpœna without a bill being actually filed makes no *lis pendens;* but the bill being filed, the *lis pendens* comes from the service of the subpœna, though it be not returnable till the next term, and though the party lives never so remote; otherwise a man, upon the service of a subpœna, might alien his lands and prevent the justice of the court; but that being by the counsel observed to be a hard fiction in equity to bind purchasers, it was proposed that some course might be taken by having some public record or calendar kept, whereunto purchasers might have resort, and see what lands are in demand in this court, as they may at law in cases of *fines. Curia advisare vult.*" I am unable to see that anything was decided by this case, but the question was held for further consideration; and yet this case has been cited by some elementary writers and by some judges, as establishing the rule as claimed. But there is no

reported case which I have been able to find, since that one, which lays down the rule as claimed.

Suits in equity may now be commenced by the service of the summons alone; but it would be quite monstrous to hold that the suit shall be deemed pending from the time of such service, so as to be " constructive notice " to all the people of the State of its pendency. No record is kept of the issuing of the summons, and it is not required to be filed. It may be issued by any one of several thousand lawyers in the State, or by any one of several hundred thousand persons in the State competent to be plaintiffs in a suit, and it might not be possible for a stranger to the suit, by any degree of diligence, to learn that it had been issued or served; and if he did perchance learn of it, it would give him no notice whatever of the subject-matter of the litigation. If, therefore, the mere service of a summons should be a *lis pendens*, so as to bind strangers, it would introduce great uncertainty and embarrassment into transactions in reference to personal property, provided the rule of *lis pendens* were extended as broadly as claimed for the plaintiffs in this case. I therefore hold that there is no *lis pendens*, so as to give constructive notice to strangers, until a summons has been served, and a complaint, distinctly stating the subject of the litigation and specifying the claim made, has been filed in the proper clerk's office. The rule as thus stated is sufficiently hard and unreasonable.

We come, then, to the inquiry in this case, as to when the suit of Mrs. Leitch and others against John Kellogg and wife was pending, within this rule.

The summons in that suit was served December 4, 1861, and there is no proof that either the original or supplemental complaint was filed before the judgment was entered, September 12, 1864. They may both have been filed before, and it is quite probable that at least the supplemental complaint was filed before. But they may not have been, and there is no proof upon the subject. The stock of the Bank of Syracuse was pledged May 30, 1862, and the stock of the

Tompkins County Bank March 25, 1864, both before the suit, as I hold the rule to be, was pending so as to give constructive notice. It is claimed, on the part of the plaintiffs, that this defect in their proof was not pointed out on the trial. It was not necessary for the defendant to do this. It was incumbent on the plaintiff to show actual or constructive notice of their equities to the defendant. If they relied upon this constructive notice, they should have shown that the complaint was filed before the stocks were pledged. It does not appear that the plaintiffs claimed that the complaint was filed before the pledge of the stocks, and it may be that they relied upon the literal pendency of the action, by the simple service of the summons, to give the constructive notice. When the judgment roll, in that action, was offered in evidence, the defendant objected, on the ground that it was not a party to the action, and had no notice thereof, and that it was not, therefore, bound by the adjudication therein; and there was a distinct exception to the findings of law by the court, that the express company was concluded by the judgment in that action, because they took the stocks in pledge during its pendency. Hence the question is properly before us, and we must hold that the express company was not, upon the proof produced at the trial, charged with notice of the pendency of that action, or of the equitable claims of the plaintiffs to the stocks in question.

The certificate of the stock of the Bank of Syracuse bore date August 2, 1858, and was pledged May 30, 1862, long before there can be any pretence that the supplemental complaint was filed. The original complaint does not contain sufficient allegations to show that this stock was in any way set apart as a portion of the trust fund of $25,000, or that the plaintiffs in that action had any equitable claim thereto. Hence, as to this stock, for this reason also, there was no *lis pendens* as to the express company at the time it took the same in pledge.

But I have a still broader ground, unaffected by any form of pleading or defect in proof, upon which I must also base

my conclusion adverse to the plaintiffs. Stocks are articles of commerce, and the dealings in them every business day of the year far surpass in value the dealings in any other species of personal property. They pass from hand to hand in commercial transactions, like negotiable notes or bills of exchange. They are sold and pledged, and in many ways form the basis of credit.

Since the decision of the case of *McNeil* v. *Tenth National Bank*, above cited, certificates of stock, with blank assignments and powers of attorney attached, must be nearly as negotiable as commercial paper. The doctrine of constructive notice by *lis pendens* has never yet been applied to such property. This doctrine must have its limitations. It could not be applied to ordinary commercial paper, nor to bills of lading, nor to government or corporate bonds payable to bearer. Indeed, I do not find that it has ever been applied, and I do not think it ought to be applied, to any of the articles of ordinary commerce. Public policy does not require that it should be thus applied. On the contrary, its application to such property would work great mischief and lead to great embarrassments. As I have before stated, it has generally been applied to real estate, and but rarely to any species of personal property. I have in mind but one case (there are doubtless others) where it has been applied to personal property, and that is the case of *Murray* v. *Lylburn* (2 Johnson's Ch., 441), where it was held to apply to a bond and mortgage. In that case, the learned chancellor, however, says: " If he possess cash as the proceeds of the trust estate, or negotiable paper not due, or perhaps movable personal property, such as horses, cattle, grain, etc., I am not prepared to say the rule is to be carried so far as to affect such sales. The safety of commercial dealings would require a limitation of the rule ; but bonds and mortgages are not the subject of ordinary commerce." And this language of the chancellor is cited with approval by Senator Seward in *Parks* v *Johnson* (11 Wend., 458).

I have, therefore, reached the conclusion that the American

Express Company was, at the time the stocks were pledged, unaffected with notice of plaintiffs' equities, and hence that its claim as pledgee is good as against them.

The judgment must be reversed and new trial granted, cost to abide event.

All concur.

Judgment reversed.