GEORGE R. GRAY, treasurer of the State of New Jersey,

*v.*

WILLIAM R. CASE and others.

If in proceedings by a railroad company to condemn lands under its charter it fails to give notice to a mortgagee, and such mortgagee surrenders his mortgage and accepts another from the owner of the premises for a larger sum, which he has recorded pending the proceedings to condemn, but before the award is filed in the office of the clerk, the condemnation proceedings are subject to such new mortgage, and the distribution of the moneys awarded to the owner will not bar the mortgagee from recovering the whole amount of said award and interest, or so much as may be necessary to pay the balance due after the sale of the lands covered by the mortgage and not included in the condemnation. In such case interest is to be computed on the award from the time when the balance due is ascertained. In such case, also, the mortgagee is not chargeable with neglect if he files his bill at any time within the statutory period.

On bill to foreclose.

*Mr. William Y. Johnson,* for the complainant.

*Messrs. McCarter, Williamson & McCarter,* for the defendants.

BIRD, V. C.

The facts upon which this case is to be determined have been agreed upon by counsel, and are in substance as follows: Adair was the owner of the mortgaged premises in fee simple on the 2d day of March, 1868; on that day he made application to the commissioners of the sinking fund for a loan of $6,000; on March 20th, 1868, he executed a bond for $6,000, and delivered it to said commissioners, and also a mortgage upon the premises mentioned in the bill of complaint, to secure the payment of said bond, which said mortgage was recorded on the 28th day of March, 1868, in the clerk's office in the county where the said lands lie; Adair conveyed said lands to Henry Westcott by deed dated November 17th, 1870, subject to the

lien of said mortgage, which said deed was recorded in the said clerk's office on the 18th day of November, 1870.

The Easton and Amboy Railroad Company, a corporation organized under and by virtue of an act of the legislature entitled "An act to consolidate the Bound Brook and Easton Railroad Company and the Perth Amboy and Bound Brook Railroad Company, supplementary to the charters of said companies," approved April 2d, 1872 (*P. L. of 1872 p. 1017*), on September 3d, 1872, by their attorneys made application to Judge Depue for appointment of commissioners to condemn a portion of the lands in question for railroad purposes, and an order was made the same day fixing the 17th day of September for the appointment of such commissioners (which order was duly served upon the owner and tenant on September 6th and 7th); they were appointed on that day; they caused notice to be given to the owner and tenant of their meeting on October 19th; on October 24th they made their award in writing, awarding Westcott $318 for his land and $678 for his damages; and the award was filed on the 30th day of October, 1872.

On the 2d day of July, 1872, said Westcott made application for an additional loan of $4,000 upon said lands. On the 12th day of October he executed and delivered to the said commissioners his bond for $10,000, and gave a mortgage upon said premises to secure the payment thereof, which mortgage was recorded in the clerk's office where the said lands lie on the 26th day of October. On the 23d day of October $4,000 were paid said Westcott by the clerk, and the said $6,000 mortgage given by Adair was surrendered to said Westcott, which he caused to be canceled on the 26th day of the same month.

The said award was paid to Westcott.

Neither the State of New Jersey nor the sinking fund nor the complainant had any notice of the said condemnation proceedings, nor was either of them made a party thereto; nor had either of them any knowledge of the payment of the award to Westcott. The complainant has succeeded to all the rights, powers and duties of the commissioners of the sinking fund.

Upon these facts the complainant claims that his mortgage is superior to the rights of the defendants under the condemnation proceedings to the full extent of the amount due upon his mortgage as set forth in his bill; but if not to the entire balance due thereon, then to the extent that he may be entitled to thereon under the said Westcott mortgage of $6,000, as if the same had not been canceled of record.

On behalf of the defendants it is insisted that because the commissioners of the sinking fund, under whom the complainant holds, took their title pending the proceedings for condemnation or *pendente lite*, their and his rights were subject to such proceedings; that the $6,000 mortgage having been canceled it falls under the same condemnation. It is also insisted that if, at the time of the execution of the $10,000 mortgage, the commissioners had any rights from want of notice as to the $6,000, the amount of the prior mortgage, which formed so much of the $10,000 mortgage, all such rights have been lost to the complainant because of his unreasonable delay.

Notwithstanding the severity of the rule that those who deal with property, which is at the time subject to litigation, do so at their peril and can acquire no better title than results to the party litigant, it seems to have been established in all its rigor in New Jersey. *Pugh* v. *Gardner, 14 N. J. L. J. 72; Den* v. *Jones, Coxe 134; Taylor* v. *Woodward, 5 Halst. 3; McPherson* v. *Housel, 2 Beas. 299; Allen* v. *Morris, 5 Vr. 159; Haughwout* v. *Murphy, 6 C. E. Gr. 118; S. C., 7 C. E. Gr. 531; Bellaney* v. *Sabine, 1 De G. & J. 566.*

Yet, before we can determine whether the case in hand is within the rule under consideration or not, we must ascertain the reason or principle upon which the rule rests, and the facts which are the foundation thereof. The reason is the right of the suitor to be absolutely secure in the judgment or decree which he recovers with respect to the matter or thing concerning which he brings his suit, as against all the rest of the world, as well as the defendant. It is true, the doctrine of public policy, looking to the suppression of needless litigation, may justly be

invoked, but the rights of the individual are more fundamental if comparison may be allowed.

But these fundamental rights presuppose certain facts or conditions. In every such case, the presumption is that due and legal notice has been given by the filing of a bill in chancery and the issuing and service of a subpœna. *Haughwout* v. *Murphy, supra; Beeckman* v. *Montgomery,* 1 *McCart.* 106; *Leitch* v. *Wells,* 48 *N. Y.* 585; *Hayden* v. *Bucklin,* 9 *Paige* 512, 514; *Murray* v. *Ballou,* 1 *Johns. Ch.* 566; *French* v. *The Loyal Co.,* 5 *Leigh* 627.

These authorities show that the doctrine of *lis ·pendens* is not favored by the courts, and that they who rely upon it have the burden of establishing the facts necessary to bring them within its requirements.

The defendant company cannot claim the benefits of this rule. It will be observed that, in order to bring the rule into operation, there must be a complaint or petition or other proceeding filed in or placed upon the records of the office of the court in which the proceedings are had, and subpœna must be issued out of such court and regularly served. Nothing that can be likened unto this was done in the case under consideration. On September 3d, 1872, the company made application to a justice of the supreme court for the appointment of commissioners to condemn the land and assess the damages, and an order was then made fixing September 17th for the appointment of commissioners, which order was duly served on the owner and tenant, but not on the then holders of the mortgage under whom the complainant has his title. The commissioners were appointed on the 17th of the same month. The commissioners fixed October 19th as the time for their meeting, of which the owner and tenant had due notice. On the 24th of October they made and executed their award and caused it to be filed on the 30th of that same month. While these proceedings were pending, the mortgage for $6,000 was upon the records of the county in which the lands lie; and during that same time the then owner of the lands was negotiating with the holders of said mortgage for an additional loan of $4,000, which they allowed to him. They agreed to secure both

loans (that is, the previous loan of $6,000 as well as the $4,000) by one bond and a mortgage covering the same premises which had been included in the $6,000 mortgage. This was effected on the 26th day of October, on which day the last-mentioned mortgage, being for $10,000, was placed upon record four days before the proceedings of the commissioners were filed.

This statement includes every material transaction and presents to us all the publicity of any nature whatsoever that was given to the action of the court or of the commissioners, or of anything done by them. Nowhere does it appear that any paper having the slightest reference to these proceedings was either filed or recorded or was served upon the commissioners who first held the $6,000 mortgage and afterward the $10,000 mortgage. Parties are bound by the rule above stated, because what is transacted in the courts of justice is of such a high public nature that they are presumed to have knowledge thereof; but this presumption does not arise until there has been some record showing to the public who is invoking the aid of the court and against whom he is invoking such aid and for what cause. All these things are wanting in the present matter. Not only does the well-settled rule require the filing of a bill of complaint or · its equivalent, and the issuing and service of a subpœna before notice to all parties is presumed, but in this case the statute creating the defendant company expressly directs that notice shall be given to the owner and all parties interested in the land. *P. L. of 1872 p. 317 § 8.* *The State, National Railroad Co., pros.,* v. *The Easton and Amboy Railroad Co., 7 Vr. 181,* distinctly holds that a mortgagee is included amongst those who are interested. *Mills Em. Dom. § 103.*

But the company failing to give the requisite notice, it still had the right to have equitable distribution of the award amongst those interested. For this purpose it was entitled to the aid of the court. *Platt* v. *Bright, 2 Stew. Eq. 128; S. C., 4 Stew. Eq. 81.*

This, too, was neglected by the company. Parties who fail to avail themselves of the rights and safeguards which the law offers them cannot complain when such failure results in their disadvantage.

The conclusion therefore is that the defendant company is still liable, there having been a sale of all of the residue of the mortgaged premises, from which was not realized enough to satisfy the mortgage by about $4,000, or about four times the amount of the award. The extent of the liability of a company is the whole amount of the award and interest thereon from the time of the execution and delivery of the deed by the sheriff for the said residue. At that time, and not until then, the amount for which the company was liable was fixed, since it had the right to have the residue sold before it could be called upon to pay. *North Hudson County Railroad Co.* v. *Booraem, 1 Stew. Eq. 450,* reversing *Booraem* v. *Wood, 12 C. E. Gr. 371.*

The counsel for the defendant earnestly insisted that the doctrine of laches should be applied to the complainant. The complainant cannot be said to be in fault when he has done all that the law requires. In this case the complainant's $6,000 mortgage was recorded at the commencement of the condemnation proceedings. Nothing whatever intervened of which he had notice until after he exchanged that mortgage for another. It seems very plain that, under the law (he having no notice of the condemnation proceedings), he had twenty years from the date of the substituted mortgage in which to assert his rights. It was the defendant railroad company that was in fault in neglecting to make this mortgagee a party. This it did at its peril. Having taken the risk, it cannot charge the complainant with laches when he simply asserts his rights within the statutory period. But the company says it was the duty of the complainant to act promptly when he discovered that it had appropriated the land to the construction of its road. I should say it was rather the duty of the company to take steps to satisfy the interests of the complainant when it discovered such interests had not been embraced within the condemnation. The complainant's interest was not secret, but open and notorious, at the time of the commencement of the proceedings for condemnation. It was a constant menace to the railroad company, but it proceeded in defiance thereof. I am unable to see how he who is guilty of such negligence can shift the responsibility therefor upon the

party who has the strongest legal and equitable claims to his attention. This view seems to be fully within the spirit of the case of *Platt* v. *Bright, 2 Stew. Eq. 128; S. C., 4 Stew. Eq. 81.*

In connection with the point last considered, it was strenuously urged that the complainant did not earlier assert what he now claims to be his rights because he relied upon the value of the premises not occupied by the defendant company as being abundantly sufficient to satisfy his entire claim. This, at once, coming from the defendant, the great probability is that it also supposed the balance of the land would be sufficient to discharge the $6,000 mortgage, and that that was the reason it did not give to the holders of the mortgage any notice of its proceedings to condemn nor call upon this court to make an equitable distribution of the amount of the award.