DAVID COLLIN AND ANOTHER, AS EXECUTORS OF ASEL WILCOX, DECEASED, RESPONDENTS, *v.* ASEL WILCOX AND OTHERS, APPELLANTS, IMPLEADED WITH OTHERS, DEFENDANTS.

*Legacies — deferred in payment until final distribution, but charged on the estate generally — a new security, taken by executors and set apart to pay the legacies, does not exonerate the residue of the estate.*

Asel Wilcox died in 1867, leaving a will which was proved in that year, and two sons, Franklin and Asel F., and also three daughters. He directed by his will that the debts and specific legacies should be first paid out of his real and personal estate, and authorized his executors to sell and convey his real estate and to invest the avails in bond and mortgage. He gave to Asel, son of his son Franklin, $1,000, to be paid him at majority, with interest, from one year after the death of the testator; and also provided that if his son Franklin should have any other son or sons, or if his son Asel F. should have any son or sons before a final distribution of the property, then he gave to each grandson $1,000, to be paid to him at majority, without interest. By the tenth clause the testator devised the residue of his estate to his five children equally, the daughters, however, to have only a life estate in their shares, with remainder to their children.

Asel F. Wilcox, who was sole managing executor, accounted in 1873 and in 1877, and on both occasions large sums were found in his hands, which he was directed to hold, among other things, for the benefit of children of Asel F. and Franklin Wilcox, who had been born in the meantime.

In December, 1878, Asel F. Wilcox executed a bond to himself and the other executors to secure the shares of six grandchildren entitled to legacies under the will, and as collateral thereto gave a chattel mortgage, and as additional security gave a real estate mortgage for a part of the debt. The Special Term found that in taking this bond and the mortgages the executors "intended to, and did thereby, sequestrate and set apart from the principal of said estate the sum of $7,347.55 as a fund for the payment of the legacies" to the grandsons.

At this time Asel F. was solvent and the mortgaged property was sufficient in value to pay the legacies, but in 1879 Asel F. became insolvent.

In 1888 an action was brought for the construction of the will, on the trial of which it appeared that the property described above as sequestrated, and set apart to pay the legacies, was insufficient for that purpose, but that there were in the hands of the executors, excluding securities set apart to the daughters, moneys and real estate unappropriated by the executors to any specific purpose. The personal property, however, was not sufficient to make the shares of the daughters of Asel Wilcox equal to those of the sons.

*Held*, that the power to sell the real estate amounted, under the circumstances, to a direction to sell it, and that it must, therefore, be treated as personal property.

That the legacies to the grandsons were by the will charged upon the estate generally.

That the act of the executors in taking from Asel F. Wilcox his bond and the mortgages was improper as regarded the security taken.

That it had not the effect to exonerate the rest of the estate from the lien of the legacies, it having been done without the consent of the legatees and without any authority from the court, neither of the surrogate's decrees having set apart a particular fund for their payment.

That the grandchildren, as legatees, had a right to reach the general funds remaining in the hands of the executors, although this would result in a loss to the residuary legatees.

APPEAL by the defendants, A. Foster Wilcox, Lincoln Wilcox, Roscoe Wilcox, Ralph Wilcox and Willard T. Wilcox, and each of them, from so much of a judgment of the Supreme Court, entered, after a trial by the court, in the clerk's office of the county of Onondaga on the 18th day of August, 1891, as is hereinafter specified.

*First.* Said defendants appeal from so much of the third subdivision of said judgment as determines that the amount of the legacy to Grant Wilcox should be held generally by the executors as security for Asel F. Wilcox's judgment or debt; said defendants claiming that such legacy should enure to their benefit to the amount of their several legacies.

*Second.* Said defendants appeal from so much of said judgment as is contained in the fifth subdivision thereof, and each and every part thereof, namely :

5. That " the bond and mortgage dated December 16, 1878, mentioned in the thirteenth and fourteenth findings of fact, and the sum of $7,347.55 secured thereby became, by the action of the executors with respect thereto, a fund for the payment of legacies to grandsons, given by the ninth subdivision of said will, all amounts received by said executors to apply upon, or realized from

said bond and mortgages, should be held and retained by them as a fund to pay said legacies; and the interest or income hereafter derived therefrom should be retained for the same purpose, if necessary, to make good losses or deficiency of any kind in said fund. If the amounts so received and realized be sufficient, the legacies to the six sons of Asel F. Wilcox should be paid in full as they respectively fall due; if not sufficient, such legacies should abate *pro rata* and be paid *pro rata* from said fund. The deficiency, if any, cannot be made good out of the general estate." It is hereby so adjudged and decreed and judgment is hereby entered in accordance therewith and the aforesaid thirteenth and fourteenth findings of fact, as thereinbefore stated.

*Third.* Said defendants specially appeal from that part of said judgment contained in the fifth subdivision thereof which reads as follows: "If not sufficient such legacy should abate *pro rata*, and be paid *pro rata*, from said fund. The deficiency, if any, cannot be made good out of the general estate."

And also an appeal by the defendants, Asel Wilcox and Isabella Wilcox, his wife; Henry Wilcox and Bessie Wilcox, his wife; and Henry R. Case, as administrator of Franklin Wilcox, deceased, from the following portions of a judgment of the Supreme Court, entered, after a trial by the court at the Onondaga Special Term, in the office of the clerk of the county of Onondaga on the 18th day of August, 1891, namely, from paragraphs:—

1. That, in the absence of a "final distribution" of the property of Asel Wilcox, deceased, as found in the ninth finding of fact, each of the six sons of the defendant Asel F. Wilcox took at his birth a vested right in a legacy of $1,000, payable, without interest, at his attaining the age of twenty-one years, under the ninth subdivision of said will, it is hereby so adjudged and decreed, and judgment hereby ordered and entered in accordance therewith.

6. That "the plaintiffs, as acting executors by said will, with the co-operation of their co-executor, Asel F. Wilcox, whenever such co-operation is necessary, should proceed at once to sell the lands at Sodus Bay, hereinbefore mentioned, and any other lands belonging to the testator, Asel F. Wilcox, at the time of his death and not heretofore disposed of; and to convert into money whatever of said estate remains in their hands, and from the proceeds make such pay-

ments as will secure equality between the residuary legatees mentioned in the tenth subdivision of said will, as required by said will; if unable to secure such equality without further instruction from the court they should make a full accounting of all their transactions with respect to said estate since October 8, 1877; and all receipts and disbursements on account of said estate, and all money, securities and property of every kind belonging to said estate, and remaining in their hands or under their control, and take the direction of the court as to the final settlement of said estate, and final distribution of the property belonging thereto." It is hereby so adjudged and decreed, and judgment is hereby ordered and entered in accordance therewith.

7. That " the securities set apart and held in trust for the three daughters of the deceased testator and for their children, as found in the twenty-seventh finding of facts, are the property of the said daughters and their children, and should be charged to them as payments made on account of the residuary legacies given to them by said will, the daughters having, respectively, life estates therein, with remainder absolute to their children as provided in said will." It is hereby so adjudged and decreed, and judgment is hereby ordered and entered in accordance therewith.

8. That, "should any of the daughters of the testator with their children desire to withdraw from the hands of the executors the securities held in trust for them, or should any of the said daughters and their children desire to divide the life interest and remainder interest in said residuary legacies, and the securities held on account thereof, the decree to be entered hereon may provide for the entry, upon proper notice to the parties in interest, of an order or decree, or orders and decrees supplementary hereto, providing for such withdrawal upon the giving satisfactory security to such children that they should receive at the proper time their respective shares of the principal of said securities, or for such division in such manner as may be just and equitable, or for both such withdrawal and division." It is hereby so adjudged and decreed, and judgment is hereby ordered and entered in accordance therewith; and any such supplementary order or decree may be had and entered as aforesaid provided.

9. That " the suit mentioned in the thirty-first finding of facts is

not a bar to the maintenance of this action." It is hereby so adjudged and decreed, and judgment is hereby ordered and entered in accordance therewith.

The action was brought in 1888 to obtain a construction of the will of Asel Wilcox, and the directions to the plaintiffs as to the administration of the estate.

*Lyman & James*, for the appellants.

*N. R. Chapman* and *W. S. Andrews*, for the respondents.

MERWIN, J.:

On the 5th of June, 1867, Asel Wilcox, of Manlius, in Onondaga county, died, leaving a will and codicil which were duly proved on June 27, 1867. He left two sons, Franklin and Asel F., and three daughters. By the ninth clause of the will he gave to his grandson Asel, the son of his son Franklin, $1,000, to be paid to him upon his arrival at the age of twenty-one years, with interest from one year after his death, and he also provided that " if he, said Franklin, shall have any other son or sons, or my son, Asel F., shall have any son or sons, lawful heirs, before a final distribution of my property, I give and bequeath unto each such grandson the sum of one thousand dollars, to be paid him, without interest, on arriving at the age of twenty-one years." By the tenth clause, he gave and devised all the rest and residue of his estate, real and personal, to his five children, to be divided equally between them, the daughters to have only a life estate, with remainder over to the children of each. By a prior provision he directed that his debts and the specific legacies thereinafter named should be first paid out of his personal and real estate. The executors were authorized to sell and convey any part or all of his real estate, and invest the avails on good landed security by bond and mortgage, but they should not be compelled to sell any of the real estate under five years, nor his Sodus Bay estate under ten years from his death.

The appellants upon this appeal are the five sons of Asel F. Wilcox, and the questions here relate to the remedy they have for the collection of their legacies. One was of age when this action was commenced, one has since become of age, and the others are still minors.

The executors named in the codicil were the plaintiffs and Asel F. Wilcox. The testator provided that the latter should have chief charge of the estate. On the 8th of August, 1873, an accounting was commenced before the surrogate of Onondaga county by Asel F. Wilcox, as sole managing executor, of his acts and transactions to that date. This accounting was continued from time to time to June 25, 1877, when a decree was made as of August 8, 1873, stating and allowing the accounts of the executor to that date. By this decree it appears that there was then in the hands of the executor, after crediting him with all payments made, the sum of $51,636.43. Certain payments to Franklin Wilcox upon his share were authorized, and the executor was also authorized to retain certain sums on his own share. He was directed to retain and hold in trust such sum of his own share as shall be necessary to pay one-fifth part of all the legacies to the grandsons of the testator born before the final distribution of the estate, and also to retain and hold in trust so much of the share of Franklin as may be necessary to pay one-fifth of all said legacies. He was directed "to pay the several legacies of $1,000 each to said grandsons out of the principal of the estate as such grandsons shall respectively arrive at the age of twenty-one years," and it was provided that in case of diminution of the principal of the estate by the payment of any of those legacies, each share would bear and contribute one-fifth of such diminution. He was also directed to keep such sums as may, from time to time, belong to the respective shares of the daughters "securely invested, paying over the net income to them, respectively, annually during their natural lives, and to finally distribute to the children of each daughter of the testator the principal money belonging to such share, the same being one equal fifth part of the residuum of the estate after paying the specific and general legacies provided in said will." Special provision was made in the decree for the payment of the legacy to Asel C. Wilcox, the oldest grandson.

On the 23d of July, 1877, a second accounting was commenced before the surrogate concerning the acts and transactions of said executor from August 8, 1873. A decree was entered on October 8, 1877, stating and allowing the account to the time of such accounting. At this time there was in the hands of said executor, in cash

and securities belonging to the estate, including the sum of $2,060.89 of Franklin Wilcox's share and the same amount of the share of the executor set apart and reserved by the executor for the payment of the grandsons' legacies, the sum of $31,057.55. By the decree above referred to it was directed "that the above sums, amounting to $31,057.55, be held in trust for the purposes mentioned in said will, as adjudged in said former decree in this matter; and that annually or oftener the net income thereof be paid to the persons entitled to the same according to the provisions of said will."

At the time of the second accounting there was found to be and was in the hands, of Asel F. Wilcox, the managing executor, the sum of $7,347.55, which was uninvested and unsecured, and was a part of the principal of the estate. On the 16th of December, 1878, Asel F., for the purpose of securing the payment of this sum and interest, executed to all the executors, being said Asel and the plaintiffs, his bond, conditioned for the payment of $1,000 of the principal to each of the grandsons entitled to a legacy of that amount or their representatives, when such legacy should be payable, the balance to the other parties in interest. As collateral security for three-fifths of the amount a chattel mortgage was given, and for two-fifths a real estate mortgage, which was also to be collateral to the chattel mortgage. It is found by the Special Term that the executors in taking this bond and the mortgages, "intended to and did thereby sequestrate and set apart from the principal of said estate the said sum of $7,347.55 as a fund for the payment of the legacies" to the grandsons. Asel F. was then solvent and the property covered by the mortgages was then of value sufficient to furnish ample security for the payment of the legacies. At this time there were six grandsons, or their representatives, that would in the future be entitled to legacies. Of these grandsons one was the son of Franklin Wilcox and five were the sons of Asel F. Wilcox. Thereafter and on December 6, 1879, another son, the appellant, Willard T. Wilcox, was born to said Asel F.

Since 1879 Asel F. has been insolvent and the executors are unable to collect, upon said bond and mortgages, sufficient to pay the legacies in full. None of the legacies to the sons of Asel have been paid, except that the defendant A. Foster Wilcox has received a part of his share.

Asel F. Wilcox withdrew from the active management of the estate in 1880 and turned over to the plaintiffs, his co-executors, all the property and securities of the estate, except the chattel mortgage. Since then the plaintiffs have set apart and held in trust for the shares of the daughters under the residuary clause, securities belonging to the estate to certain amounts, but not sufficient to make the shares of the daughters equal to what the sons have received into the sum of $1,384.37 for each share. Aside from the property so set apart, there is in the hands of the executors and treated as unappropriated property about the sum of $2,000 of the personal estate, and also real estate undisposed of to the value of from four to five thousand dollars. Aside from the real estate, there is not enough to make the shares of the residuary legatees equal.

It seems to be conceded that the power to sell real estate was, by implication, a direction to sell. If so, there was an equitable conversion of the real estate into personalty, and this is to be borne in mind in construing the will.

I do not understand that the appellants make any claim upon the securities already set apart by the plaintiffs to the shares of the daughters above referred to. The court below, in the seventh finding of law, found, as matter of law, that they were to be treated as payments to such shares, and to belong absolutely to the daughters and the remaindermen. This finding is not excepted to. The claim, therefore, of the appellants refers to this unappropriated personal property and the undisposed of real estate. These items are understood to be amply sufficient to provide for the deficiency of the legacies, but not enough for that deficiency, and also to make up the daughters' shares equal to what the sons have received.

It was decided by the Special Term that the grandsons in the collection of their legacies were limited to the security furnished by the bond and mortgages of December 16, 1878, and that if enough could not be realized from them to pay the legacies in full, the deficiency could not be made good out of the general estate. Whether this conclusion of the Special Term is correct is the main question here.

By the will there was no provision for setting apart a fund for the payment of these legacies. They were made a charge generally upon the estate. In the first decree there was a provision that these

legacies, as they became due, should be paid from the principal of the estate, and, when so paid, each share to be diminished accordingly. No fund was directed to be set apart for that special purpose. The executor was directed to retain and hold in trust so much of his own share as would be necessary to pay one-fifth of the legacies, and a like amount from the share of his brother Franklin. The entire amount of the other shares he held, as the daughters were only entitled to the income. The second accounting shows that the executor had retained about two thousand dollars from his own share and the same from that of his brother. The decree directed the whole fund to be held in trust for the purposes mentioned in the former decree. There was no setting apart of a fund for the legacies. There was no direction of the court as to the amount or kind of any investment for that purpose.

So that, for aught I see, the question whether the investment of December, 1878, is to have the effect that has been given to it depends upon whether the act of the executors in setting apart this fund is sufficient of itself to exonerate the balance of the estate from the charge which, concededly, was upon it up to that time.

It is not found, nor does the evidence show, that the security taken was one in which, under the law, the executors would have had the right to invest a trust fund. That being so, the rule laid down in *Leitch* v. *Wells* (48 N. Y., 585) would be somewhat applicable. It is there said that, in case a fixed sum is bequeathed to executors in trust to pay the income to one party, and at his death divide the principal among others, the executors cannot, without the consent of the beneficiary, or, in case they are infants, without an order of court, set apart and appropriate bank stocks to the satisfaction of the trust, and release the residue of the estate from its liability to perform the trust.

In 2 Williams on Executors (6 Am. ed., 1511), it is said: "When a fund has been appropriated for the payment of an annuity given by will, a question may arise whether the legatee is to suffer the loss consequent on the partial failure of the fund. In cases where the annuity is a charge upon the whole personal estate, it seems clear that the executor cannot affect the legatee's right to the entire annuity by any appropriation," and many cases are referred to. If an estate shrinks, whether by devastavit of the executor or other-

wise, the loss primarily falls upon the residuary legatee. (*Baker* v. *Farmer*, L. R., 3 Chan. App. Cases, 537; 2 Williams on Exrs., 1465; 13 Am. and Eng. Encyc. of Law, 132.)

We are of the opinion that the executors had no right to limit the lien of the legacies, and that their act in setting apart the bonds and mortgages did not exonerate the balance of the estate, and cannot be deemed the equivalent of a payment of the legacies. It follows that the appellants are right in their position that they can reach the general fund in the hands of the executors in preference to the claims of the residuary legatees to apply the same to equalize the residuary payments.

It was apparently claimed by the plaintiffs at the trial that the appellant Willard T. Wilcox was not entitled to a legacy upon the ground that upon the second accounting there was a final distribution of the property, and he was not born until December 6, 1879. The Special Term held to the contrary, and no appeal is before us from that part of the judgment. It is not necessary, therefore, to consider the question.

It follows that the judgment should be modified so as to allow the appellants payment in full of their legacies from any of the testator's estate remaining in the executors' hands, and not covered by the seventh finding of law. The appellants should also have costs of the action and of the appeal payable from the estate.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment modified as stated in the opinion and as modified affirmed, with costs to the appellants of the appeal and of the action, payable out of the estate. Judgment to be settled before MERWIN, J.